## MUNMON v. TRADERS & GENERAL INS. CO.

Court of Civil Appeals of Texas. Beaumont.

Feb. 4, 1943.

Rehearing Denied March 3, 1943.

Musslewhite & Fenley, of Lufkin, for appellant.

H. W. Strasburger, of Dallas, for appellee.

O'QUINN, Justice.

This is a workman's compensation insurance case. Lufkin Foundry & Machine Company was the employer, Nute Munmon the employee, and Traders & General Insurance Company the compensation insurance carrier. While engaged in his master's business on about October 19, 1941, appellant received an injury for which he claimed compensation as for total and permanent incapacity. He claimed that under the law he was entitled to receive his compensation at the rate of $20 per week, in a lump sum. Prior to filing this suit, appellee had acknowledged its liability and had paid appellant compensation at the rate of $11.08 per week, which appellant had accepted but not as payment of the proper and full amount as claimed by the injured employee. After employing counsel to represent him several letters were exchanged between counsel for appellant, Munmon, and appellee, the insurance carrier. This suit followed.

On May 1, 1942, appellant's attorneys wrote to the Industrial Accident Board advising it that appellant was totally and permanently disabled, and that he desired his compensation in a lump sum; that appellee was paying him weekly compensation at a certain rate, but according to his earnings during the year immediately preceding his injuries, his compensation rate was considerably higher than they were paying, and asked the Board to set the case down for a hearing on the question of lump sum, extent and duration of incapacity, and correct compensation rate.

On May 4, 1942, the Board replied to this letter:

"May 4, 1942
B-6180
In re: Nute Munmon vs Lufkin Foundry and Machine Co.
Musslewhite and Fenley
Attorneys
Tinkle Building
Lufkin, Texas
Gentlemen:

In answer to your letter of May 1st, we advise you that we have insufficient in our files upon which to base an accurate computation of the average weekly wage. We are therefore today requesting from the employer a sworn and detailed wage analysis. Upon receipt of this analysis, we will be glad to compute the average weekly and corresponding compensation rate.

Before the Board will be able to consider setting this case for hearing on the question of lump sum settlement, it will be necessary that you file with this department a detailed narrative medical report, signed by a physician, setting forth the fact that this claimant has reached his maximum recovery and is totally and permanently disabled.

Very truly yours,
Industrial Accident Board
(Signed) Berniece Grieder
Secretary."

This communication was received by attorneys for appellant 5/6/42.

On May 11, 1942, the Board wrote appellant's attorneys as follows:

"B-6180
In re: Nute Munmon vs Lufkin Foundry and Machine Co.
Musslewhite and Fenley, attys.
Tinkle Building,
Lufkin, Texas

Gentlemen:

On date of May 7th we received a sworn and detailed wage statement from the Lufkin Foundry and Machine Company. On May 8th we dictated a letter concerning the compensation rate basing our computation on the above mentioned wage statement. The wage statement states that the claimant worked for an entire 12-months period for the Lufkin Foundry and Machine Company during the year immediately preceding his injury. He earned during this period the total sum of $1071.60. Of this amount $174.00 was overtime payment and $32.00 bonus and vacation. We divided the claimant's total earnings by 52 weeks in the year, and found an average weekly wage of $20.61. Sixty percent of $20.61 gives a compensation rate of $12.37.

Our letter of May 8th requested the insurance company to increase the compensation rate to $12.37 per week. However, on that same day we received a corrected report of initial payment of compensation from Traders and General Insurance Company, raising the compensation rate to $12.36. It is the Board's opinion that this

is the proper compensation rate to apply in this matter.

Very truly yours,

Industrial Accident Board

(Signed)   Berniece Grieder
Secretary."

Said communication was received by Musslewhite & Fenley on May 13, 1942.

To this communication, said attorneys replied as follows:

"May 13, 1942.

Industrial Accident Board
Austin, Texas

Gentlemen:   Re: Nute Munmon
vs.
Lufkin Foundry & Machine Co. No. B–6180.

Your letter of May 11th in the above styled matter has been received.

We have obtained from Lufkin Foundry & Machine Company a wage statement concerning the wages of the above named claimant during the year preceding October 19, 1941, the date of his injury. The statement is not as detailed as it should be, but accepting the same as prepared by this claimant's employer, the insurer is not paying this claimant the proper amount of compensation.

The wages as reported do not show any overtime payment but shows strictly straight time. When this claimant's wages are properly computed, even under the employer's own statement, his compensation rate will be considerably higher than the amount paid by the insurer at $11.08 per week. Since we have inquired of the employer concerning this claimant's wages and time, the insurer has increased its payments to $12.36 per week. It is the claimant's contention that the new rate admitted by the insurer is still insufficient, based upon his wages earned. This is true when his actual annual wages are divided by 52. If his rate is established by dividing his annual wages by the number of days worked, his rate will even be higher.

The claimant has accepted a check in the amount of $35.84, dated May 7, 1942, for the amount that the insurance company has admitted it owes him over a period of 28 weeks, in addition to the amount already paid at $11.08, and has accepted another check issued to him since that time in the amount of $12.36, without conceding that the $12.36 rate is correct, and without waiving his right to the higher rate which he contends should be fixed in his case.

Claimant's employer represents that during the year before 1941, Claimant earned $1071.62 and that he worked 285 days. If claimant's employer is correct on the number of days claimant worked and the number of hours shown, he worked 2280 hours at regular time, or at 40¢ per hour. He worked 399 hours at 60¢ an hour, and therefore had an annual wage of $1151.40 instead of $1071.62. If we divide his annual wage by 52, his average weekly wage is shown to be $22.14 and his compensation rate $13.28. If his annual wage is divided by the number of days he worked, we have an average daily wage of $4.04 per day, with an average annual wage of $1212.00, and an average weekly wage of $23.30 per week, and a compensation rate of $13.98. Claimant believes that his employer has made some mistakes in calculating the number of hours he has worked and the number of days he worked during the year before his injuries, as well as the amount of his wages. Nevertheless the Board can determine for itself that the amount of compensation paid claimant on the hours shown he worked during the respective weeks they calculated the same at, is straight time at 40¢ per hour. We, therefore, submit that it will be impossible for claimant and the insurance company in this case to agree upon a proper compensation rate and that Claimant should not be required to accept the figures established by his employer, when the figures themselves show that his wages have been incorrectly computed.

The claimant, and we, as his attorneys, feel that the Board should hear this matter to properly determine a correct average weekly wage and a correct compensation rate.

We are submitting to you a report made concerning this man's physical condition and his incapacity, which report is made by Dr. Joe E. Burch of Lufkin, Texas. The report conclusively shows that this man is totally and permanently incapacitated within the meaning of the compensation insurance laws. Claimant desires a hearing on his case on the question of lump sum payment of his compensation.

To support and substantiate our statement in this regard, we are also enclosing to you a statement of claimant.

We feel that the claimant should be accorded the same fair treatment as the insurer, and that under the circumstances surrounding his claim, that his claim should

be heard and a proper award be made therein concerning his compensation rate and his total and permanent incapacity, as well as the payment of his compensation in a lump sum.

We will appreciate your setting this case for hearing at your convenience, and your making a proper award therein.

Thanking you in this regard, we are

Yours very truly,

Musslewhite & Fenley

(Signed)   R. C. Musslewhite."

Said communication was received by the Industrial Accident Board of Texas on May 15, 1942. On May 19, 1942, the Board addressed and mailed to Musslewhite & Fenley, attorneys for Nute Munmon, the following communication:

"May 19, 1942

B-6180

In Re: Nute Munmon vs. Foundry and Machine Co.

Musslewhite and Fenley

Attorneys

Tinkle Building

Lufkin, Texas

Gentlemen:

We are in receipt of your letter of May 13th concerning this claimant's average weekly wage and enclosing a medical report signed by Dr. Joe S. Burch and a statement of the claimant. These instruments have been presented to the Board for attention.

The Board has instructed me to inform you that it does not wish to set this case for hearing on the question of lump sum at the present time. When weekly compensation is suspended and the claimant has reached his maximum recovery, the Board will be glad to set this case for hearing on all questions, including the question of rate.

Very truly yours,

Industrial Accident Board

(Signed)   Berniece Grieder

Secretary."

The said statement of claimant mentioned in this communication from the Board was filed with the Board with the letter from Musslewhite & Fenley dated May 13, 1942, and was under oath and is as follows:

"My name is Nute Munmon. I am thirty-nine years old. I am married and my wife is Mattie Munmon.

"On October 19th, 1941, I was working for Lufkin Foundry and Machine Company at Lufkin in Angelina County, Texas, rolling into the shop a large steel blank gear to be machined and the gear turned over on me crushing my right leg just below my hip, and injuring my hips, back and muscles, ligaments and bones of my right leg, right hip and back.

"I suffer constant pain in my back, hips and right leg and am now walking on two crutches. I am not able to walk without crutches. I cannot put any weight on my right leg or right foot. I am now totally disabled to do any character of work.

"I have been examined by Dr. Joe S. Burch of Lufkin. He made a physical examination of me and made X-ray pictures of my back, hips and leg. Dr. J. C. Clement also examined me with Dr. Burch. Dr. L. H. Denman has been treating me since I was injured for the insurance company.

"During the year before I was injured, I worked practically every day for Lufkin Foundry and Machine Company. I was supposed to be paid time and a half for every hour of over time that I worked. For every hour over eight of each day and for every hour over forty of each week I was supposed to be paid time and a half. From the wage statement furnished my attorneys by my employer it shows that I was not paid the over time I was supposed to draw as my wages. The insurance company has paid me some compensation at $11.08, per week. After I employed attorneys to represent me, they have begun to pay me $12.36 per week. I am accepting the $12.36 checks without waiving my right to the additional compensation to which I am entitled, because I believe that the compensation rate is still not correct and should be much higher than the insurance company is calculating it. I want my claim heard by the Industrial Accident Board so that my correct compensation rate can be fixed as it should be.

"I own my home but do not own any other property. I know that I am totally and permanently disabled to do work. I am not qualified to do any kind of work except manual labor and I cannot ever do that kind of work again according to what all of the doctors have told me. If my compensation insurance is paid to me weekly, my family and I will have to use it as it is paid to live on. If it is paid to me in a lump sum I can buy me some rent property or houses and invest the compensation in other ways so that my family and me can live on the income from my investment and

I can in that way provide myself and family with a permanent income sufficient to support us. I want my compensation paid to me in a lump sum. If my compensation is not paid to me in a lump sum manifest hardship and injustice will result to me. I want the Industrial Accident Board to hear my claim and adjudge my compensation to me in a lump sum.

"Even though the insurance company is paying me compensation by the week at a rate which I claim is not correct and is less than I am entitled to, I want my claim heard so that my proper rate of compensation insurance can be determined and that my compensation can be adjudged to me in a lump sum.

"(Signed)   Nute Munmon.

"Sworn to and subscribed before me by Nute Munmon, on this the 13th day of May, A.D. 1942.

"(Signed)   Blanche Culbertson, Notary Public in and for Angelina County, Texas."

The statement of Dr. Joe S. Burch mentioned in this communication was filed with the Board with the letter above mentioned from Musslewhite & Fenley dated May 13, 1942, and is as follows:

"April 20, 1942

Newt Munmon v.
Lufkin Foundry & Machine Company.
Musslewhite & Fenley
Attorneys at Law
Lufkin, Texas

Gentlemen:

Newt Munmon reported to the Clinic on April 14, 1942, for examination. He gave history of having received an injury on October 19, 1941, about 2:30 in the afternoon while employed by the Lufkin Foundry & Machine Company in Lufkin, Texas, when a large gear weighing about 1000 pounds fell on his right hip and thigh. He was taken to the Angelina County Hospital, and the next morning an open reduction was done for a comminuted fracture of the right femur, and he was put in a cast. He remained in the hospital about a month, and then the cast was removed in about three months. He cannot walk at the present time without the aid of crutches.

Physical examination: This man is a well developed, colored male, apparently in good health who walks into the Clinic on crutches. His blood pressure was 110/70, and pulse was 76. His physical examination is essentially negative except for the right leg. The right ankle shows some pitting edema and there is apparently some edema of the entire right leg. There is about an inch and a half or two inch shortening of his right leg. The right knee joint has only about eighty degrees of flexion, but has marked lateral motion. On the lateral surface of the right thigh there is a scar about ten inches long.

X-ray Examination: The films made are as follows:

Lumbar Spine — A.P. View Size 14″ x 17″

Pelvis — A.P. View, Size 14″ x 17″

Right Femur — A.P. & Lateral View, Size 14″ x 17″

Right Knee — A.P. & Lateral View, Size 10″ x 12″

The A. P. View of the right femur shows a badly comminuted fracture which involves about ten inches in the lower part of the upper one-third, and the entire middle third of the femur.

In the upper portion of the field there is a transverse fracture which has been bridged by a four hole bone plate with relatively short screws. The lower fragment, which is attached to the plate, is a large spiral piece of bone which extends downward some six inches below the pone place, and near its lower end two screws are imbedded in the bone in an attempt to affix it to the lower fragment. There is a marked amount of immature callous tissue extending the full length of the fracture, except in the region of the transverse fracture where there is very little callous which leads one to believe that this is a non-union. The A. P. and lateral views in the region of the knee show a marked decalcification of the bone and mottling, as one would expect to find in a rather marked bone atrophy

The A. P. View of the spine shows a rather marked scoliosis, which, in my opinion is due to the fact that the shortening in the affected leg and his tilting the pelvis quite a bit in an effort to put this foot to the floor, even though he is still on crutches, and is not able to bear weight on this leg. With the shortening of the affected leg, as given above, this condition will necessarily have to be permanent. There is a rather marked atrophy of the muscles of the right hip, as well as in the hip joint itself. This, however, is a natural result of three months inactivity of this joint and its surrounding muscles.

Opinion: It is my opinion that this man had a severely comminuted fracture of the

right femur which has been plated with some 1½ to 2 inches shortening, with a non-union in the region of the transverse fracture. At the present time this man is totally disabled. He has reached his maximum recovery in so far as performing the usual tasks of a workman in such a way that he could procure and retain employment. His total incapacity is permanent.

Yours very truly,

(Signed) Joe S. Burch, M.D."

Defendant, Traders & General Insurance Company, discontinued the payment of weekly compensation to plaintiff, Nute Munmon, on June 9, 1942.

On July 2, 1942, Nute Munmon's said attorneys mailed to the Industrial Accident Board of Texas the following letter:

"July 2, 1942

Industrial Accident Board
Austin, Texas

Gentlemen: Re: Nute Munmon v. Lufkin Foundry & Machine Company, No. B–6180.

Please advise us by return mail if Traders & General Insurance Company has notified you as per the requirements of the Workmen's Compensation Law that they have discontinued the payment of weekly compensation to the above named claimant.

It is our contention that your letters dated May 11th and May 19th, 1942, addressed to us, in which you have fixed the weekly rate of compensation for the claimant and denied him recovery of his insurance in a lump sum, are final awards and we have therefore appealed from them to the Court in this County.

It is the contention of Traders & General Insurance Company that those letters are not final awards. The claimant has not received a weekly compensation check in more than two weeks, and the insurance company has undoubtedly discontinued the payment of his weekly compensation. If your letters mentioned are not final awards, most certainly the insurance company should not object to your hearing the matter immediately.

Please advise us in this regard by return mail.

Thanking you in this regards, we are

Yours very truly,

Musslewhite & Fenley

(Signed) R. C. Musslewhite."

RCM/bc

On July 9, 1942, the Industrial Accident Board of Texas, in answer to said letter of the attorneys of Nute Munmon, dated July 2, 1942, mailed to said attorneys of Nute Munmon the following letter:

"July 9, 1942.

B–6180

In Re: Nute Munmon vs. Lufkin Foundry & Machine Company

Musslewhite and Fenley
Attorneys at Law
Tinkle Building
Lufkin, Texas

Gentlemen:

We have your letter of July 2nd, requesting information concerning the status of this matter. On date of June 16, 1942, we received information from the Traders and General Insurance Company that the compensation was suspended in this case on June 9, 1942, for the reason that you, as attorneys for the claimant, had filed notice of intention to appeal from two of the Secretary's letters in this file and had perfected this appeal by the filing of suit in District Court. This case is now pending in court on appeal from two letters of the Secretary which you contend are final awards.

We do not think the Board has jurisdiction to pass on the question of whether or not these letters are final awards or to pass on the merits of the case so long as the case is pending in court. If the court finds that your appeal was not in order, and that the Board still has jurisdiction, we will appreciate information to that effect. At that time, if the insurance company still refuses to continue payments of weekly compensation we will be glad to set the case for hearing on its merits.

Yours very truly,

Industrial Accident Board

(Signed) Berniece Grieder

Secretary."

BG: mb"

Appellee filed its plea in abatement, under oath, in which it is contended that the orders of the Board of date May 11, 1942, and May 19, 1942, were not final and appealable orders or awards of the Board, and therefore the court was without jurisdiction to hear and determine the matter, and subject to such plea in abatement filed its answer containing certain special exceptions, general denial and specially denying under oath that a final award had been made in the case by the Board. The sworn denial was directed against the letters of date May 11th and May 19th of the Board to appellant's attorneys relative to ap-

pellant's claim for compensation for his alleged injury, which letters are set forth above. Appellee attached to its answer copies of said letters and they thus became part of the record. Upon hearing the court sustained the plea in abatement and dismissed the case. This appeal is from that order.

The only question we have here to decide is whether the letter of date May 19, 1942, from the Board to appellant's counsel, or that of May 11, 1942, or both of them together, constituted a final and appealable order or award of said Board. The Board held that neither of them did. We think this was error. The order of May 19th read: "We are in receipt of your letter of May 13th concerning this claimant's average weekly wage and enclosing a medical report signed by Dr. Joe S. Burch and a statement of the claimant. The Board has instructed me to inform you that it does not wish to set this case for hearing on the question of lump sum at the present time. When weekly compensation is suspended and the claimant has reached his maximum recovery, the Board will be glad to set this case for hearing on all questions, including the question of rate."

The Board thus declined to set the case for hearing on the issue of lump-sum payment of compensation "at the present time." As was said by Judge Lane in Southern Surety Company v. Hendley, Tex.Civ.App., 226 S.W. 454, 457, "The claimant was demanding at the hands of the Accident Board that it find that he was totally incapacitated and that such total incapacity would continue permanently. He also asked that the board find that he was, at that time, entitled to a lump sum settlement. These prayers were finally refused and a contingent judgment entered. As before said, we are of the opinion that the Industrial Accident Board cannot, under law, deprive the district court of its jurisdiction, by deciding and rendering its award for the time being only and subject to modification. If it can do this, it may, by repeated judgments of like character, forever close the doors to an appeal to the tribunals provided by law. The appeal for the purpose of seeking relief in the form of a lump sum settlement is a great right; to deny an appeal by rendering an award for the time being only would be to destroy the spirit of the law, while the injured employé would be groaning under harsh and oppressive conditions and suffering injustice by having his appeal adjudicated away by the Industrial Accident Board." (Application for writ of error was denied.)

But appellee insists that the quoted case is not controlling for the reason that Article 8309a, Vernon's Ann.Rev.Civ.St., was enacted to correct the situation created by the Hendley (226 S.W. 454) and Todd (Southern Casualty Co. v. Todd, Tex.Com. App., 29 S.W.2d 973) cases. "When an injured employee of a subscriber under the Workmen's Compensation Act has sustained an injury in the course of employment and filed claim for compensation and given notice as required by Law, the Industrial Accident Board shall hear his claim for compensation within a reasonable time. Provided, however, when such injured employee is being paid compensation as provided in the Workmen's Compensation Act, and the Insurance Association is furnishing either hospitalization or medical treatment to such employee, the Industrial Accident Board may, within its discretion, delay or postpone the hearing of his claim, and no appeal shall be taken from any such order made by the Board." (Acts 1931, c. 179.)

In order for appellee to avail itself of the benefit of Article 8309a it must not only be paying the current compensation to which the injured employee, appellant, is entitled under the law, but must also be furnishing either hospitalization or medical treatment. There is nothing in the record to show that appellee was furnishing either hospitalization or medical treatment, but we think the record shows affirmatively that neither was furnished.

We think the law well settled that the letters of May 11th and May 19th above referred to constituted the Board's final award on the claim of appellant, and were appealable orders, and that the trial court erred in sustaining the defendant's plea in abatement and dismissing the action. Southern Casualty Co. v. Todd, Tex.Com. App., 29 S.W.2d 973; Todd v. Southern Casualty Co., Tex.Civ.App., 18 S.W.2d 695; Southern Casualty Co. v. Posey, 47 F.2d 1074.

It follows that the judgment should be reversed and the cause remanded for a new trial, and it is so ordered.

Reversed and remanded.