**TEXAS STATE HIGHWAY DEPARTMENT
v. FILLMON.**

No. 2840.

Court of Civil Appeals of Texas. Eastland.

Feb. 9, 1951.

Rehearing Denied March 2, 1951.

636

William S. Lott, Asst. Atty. Gen., of Texas, for appellant.

Brooks, Duke, Templeton & Brooks, Abilene, for appellee.

COLLINGS, Justice.

This is a Workmen's Compensation case brought by appellee, Ava Fillmon, against appellant, Texas State Highway Department, claiming compensation on account of the death of her husband as a result of an injury alleged to have been sustained by him while working for appellant. It was alleged that E. L. Fillmon, the deceased, had been directed as an employee of appellant, to work in a gravel pit near Abilene, Taylor County, Texas, and to remove large stones from an excavation and clean up the premises in general; that while engaged in removing said stones from said pit, deceased, on account of exertion and the high temperature, suffered a heat stroke on September 5, 1947, which caused his death. Appellee filed her claim with the Industrial Accident Board on or about August 29, 1949, long after the six months period within which the Statutes provide such claims shall be filed, but contended that good cause existed for her failure to sooner file same. The Board notified appellee that the claim had been set for hearing on Tuesday, November 1, 1949. Thereafter, on November 17th, the Board entered its order and ruling dismissing the claim for the stated reason that appellee "failed to establish * * * that claim was filed within six months as provided by law or that good cause existed for delay in filing to the date it was filed. Therefore, the Board is without jurisdiction and claim is dismissed from the docket of said cases of the Board without further action." On appeal to the District Court, the case was tried before the court without a jury and judgment was rendered for appellee. Texas State Highway Department has brought this appeal.

█ Appellant's first point complains that "the court erred in overruling defendant's plea in abatement and plea to the jurisdiction in that the trial court did not have jurisdiction to pass on any question other than good cause." Appellant contends that the order of the Board dismissing the claim for the reason stated was not a final award of the claim as contemplated by Section 5, art. 8307, Vernon's Annotated Civil Statutes of Texas, from which an appeal could be prosecuted. Appellant concedes that the

ruling of the Board is final and appealable on the issue of the Board's jurisdiction to hear the claim but urges that the jurisdiction of the District Court on appeal was limited to a determination of the issue of good cause, and that the court did not have jurisdiction to determine the merits of the claim for compensation. We cannot agree with this contention. The question of whether a claimant has good cause for delay in filing a claim, if that issue is in the case, is a fact issue to be decided by the Board in making its award or final ruling the same as any other issue of fact. Coffey v. Management Company of Texas, Tex. Civ.App., 121 S.W.2d 377.

■ The Board, after having set a time for hearing the claim, found as a fact, that appellee "failed to establish by proof that claim was filed within six months as provided by law or that good cause existed for delay * * *." Based upon this finding the Board "dismissed" the claim from its docket. The effect of this ruling by the Board was to deny appellee compensation. In our opinion, the order was a final ruling on appellee's claim as contemplated by the Statute and was appealable. Verrett v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 223 S.W.2d 33; Southern Casualty Co. v. Todd, Tex.Com.App., 29 S.W.2d 973; Munmon v. Traders & General Ins. Co., Tex.Civ.App., 170 S.W.2d 262.

■ The trial in the District Court was de novo and that court had the power to determine every issue involved whether presented to or acted on by the Board or not. Texas Employers' Ins. Ass'n v. Bradshaw, Tex.Civ.App., 27 S.W.2d 314.

The husband of appellee Ava Fillmon, died on September 5, 1947. Appellee's claim was filed with the Industrial Accident Board on or about August 29, 1949, long after the expiration of the six months period provided for by the Statute. In appellant's second and third points it is contended that appellee failed, as a matter of law, to establish good cause for her failure to file claim within the time required by the Statute and that the court erred in holding that good cause had been shown.

■ The test of a showing of good cause for delay in filing a claim beyond the statutory period is the standard of conduct of an ordinarily prudent person. The question is one of fact to be determined by the trial court or jury whose decision will not be disturbed unless the evidence is such that reasonable minds could reach no other conclusion than that good cause was not shown. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370; Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989; LaCour v. Continental Casualty Co., Tex.Civ.App., 163 S.W.2d 676; Martin v. Travelers' Ins. Co., Tex.Civ. App., 196 S.W.2d 544; Texas Indemnity Insurance Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830 (Writ Ref.).

■ Several witnesses testified that they knew Ava Fillmon and had opportunity to see and observe her during the period between the death of her husband and the filing of her claim before the Board. They all stated that during this period, Mrs. Fillmon was sick mentally and physically. They expressed the opinion that she was not able to exercise the same prudence as an ordinarily normal person, and that during all of such period was mentally and physically incapable of properly seeing after her business affairs. Mrs. Davis, a sister of appellee, testified that she or another sister stayed with appellee "most every day and every other night" during that time because she was not able to be left alone; that "she wasn't physically or mentally able to be left alone;" that "she was not rational any of the time, I don't think, * * * and did not ever appear to be normal and able to carry on business." During a portion of the time appellee was in Arizona but Mrs. Davis testified that from her letters it did not appear that she was any better while there.

Dr. Adams and Dr. Prichard had both visited and treated Mrs. Fillmon during portions of the period in question and both testified that they found her to be extremely nervous, despondent and almost incoherent; that it was hard for her to follow one line of thought. Dr. Adams testified that in his opinion she was not capable, during

the time she was his patient, of transacting her business affairs in the manner of an ordinarily prudent person. Mrs. Fillmon had been a patient of Dr. Adams for a period of about a year beginning March 25, 1948, and of Dr. Prichard from about the middle of March, 1949, until the time of the trial of this cause. Dr. Prichard testified that her condition of incapacity extended from the time he began to see her professionally until during August, 1949. In our opinion, the evidence was ample to support the finding of the court that good cause was shown for appellee's delay in filing her claim until August 29, 1949. Texas Employers' Ins. Ass'n v. Beckman, Tex. Civ.App., 207 S.W.2d 183 (NRE); Watson v. Texas Indemnity Ins. Co., supra.

Appellant contends in its fourth point that there was no evidence as a matter of law, to support the finding and judgment of the court that deceased, E. L. Fillmon, died as a result of heat stroke. The following is a brief summary of the evidence bearing upon the question:

On September 5, 1949, E. L. Fillmon was working for appellant in a gravel pit near Abilene. He was working in the pit alone. Appellant's other employees were driving trucks and came to the pit only to re-load and carry the gravel away. Deceased had been instructed to, and was, removing rocks from the pit which were considered too large to be used in the construction work and did his work at a time when the trucks were not in the pit. The rocks varied in size from a man's fist to the size of a man's head, some of the largest weighing as much as fifteen pounds. They were being thrown out of the way so that they would not be loaded on the trucks and used on the road. We cannot agree with appellant's contention that there was no evidence that deceased actually engaged in any type of work on the morning of his death. The witness Mangum testified that he "was just throwing small rock out of the pit * * * I would say there was not a boulder larger than that hat in the pit * * *."

The gravel pit in which E. L. Fillmon was working was located on a small knoll or rolling place. It was about 200 feet long by 75 feet wide and was 3 or 4 feet deep. It was open at both ends and one side was about half open. Deceased had complained of "hurting" to fellow employees the day before and two days before the day of his death. At about 11 o'clock a. m. on September 5th, the day of his death, Fillmon stated to a fellow employee who had come to the pit to load his truck, that he, Fillmon, "had another one of those spells" and then lay down under a small mesquite tree. At 11:45 o'clock a. m. when the trucks came back to the pit to re-load, Fillmon was found dead, still lying under the mesquite tree in approximately the same position as when last seen at 11:00 o'clock.

The fact that there was evidence to the effect that deceased was afflicted with or suffering from other trouble is not controlling. Texas Indemnity Ins. Co. v. Warner, Tex.Civ.App., 159 S.W.2d 173 (WRM); Armour & Co. v. Tomlin, Tex. Com.App., 60 S.W.2d 204.

The evidence indicated that the temperature between 11:00 and 11:30 o'clock on the day in question was about 90 to 92 degrees and that a breeze of about 10 to 12 miles an hour was blowing. Mr. C. E. Sitchler, of the U. S. Weather Bureau, testified that the temperature above mentioned "would not be representative of a pit; no grass or anything on it. The air itself is heated by objects on the earth and if the area was confined the air in the pit would be hotter than the air on the surrounding terrain."

Two doctors were called by appellee to testify concerning the cause of E. L. Fillmon's death. The testimony of one of the doctors will not be considered in determining the sufficiency of the evidence to support the judgment for the reason that his testimony indicates that his opinion was based upon hearsay testimony to the effect that there "was not any breeze," in the pit on the day in question. Opinion testimony must be based upon proved facts and not upon hearsay testimony. All of the witnesses who testified indicated that a breeze was blowing at the pit on the day of Fillmon's death, which is in direct conflict with one of the facts upon which the doctor admittedly based his opinion. Opin-

ion testimony, under such circumstances, cannot be considered for the purpose of upholding a judgment or finding of a trial court even though not objected to upon the trial. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533.

Dr. Tull also testified as to the cause of Fillmon's death and the following are excerpts from his testimony:

"Q. Doctor, assuming that Mr. Fillmon, on September the fourth, 1947, was visited by his sister-in-law for a couple of hours and made no complaints about feeling any ill effects of any kind; and said at that time he was working in a gravel pit where it was extremely hot; and then assuming that the next day he went out where the temperature was around ninety and worked in that gravel pit and they found him on the bank or side of the gravel pit dead, about eleven o'clock in the morning; assuming those facts to be true; and then assuming the facts that you found in your autopsy, what connection, in your opinion was the work that he was doing, if any, in exposure to the sun, in those circumstances, would have with his death? A. I would think it would be the cause of it."

\* \* \* \* \* \*

"Q. State whether or not in your opinion picking up and casting to one side rocks as big as a baseball up to those that would weigh ten or fifteen pounds, in your opinion would cause the heart to race and cause a man to exert himself? A. It sure would.

"Q. Could that exertion reach the point where it could cause the coronary occlusion which you found in this case? A. It could.

"Q. And assuming that a man who engaged in that the morning of the fifth of September 1947, before his death, sometime between eleven o'clock in the morning and eleven forty-five in the morning, in your opinion would the lifting of the rocks and the exertion out there in the sun be the producing cause of his death? A. I would say 'Yes.' "

On cross examination:

"Q. Doctor, is it likely that a native person of West Texas either doing very light work or none at all that's above ground or maybe a little below ground, in a wide, long open pit, is he likely to suffer from heat exhaustion? A. A lot would depend on his condition too, as to whether he over eaten; whether he had gotten out of the breeze; whether he was not sweating properly; whether he didn't have enough salt and a lot of things would have to be considered. In other words, one man might have heat exhaustion with a temperature of eighty and another might go to 125 and not have it.

"Q. Well, those that do have it, is there generally something else that's wrong with them? A. No.

"Q. Are they generally normal people? A. They just over exert themselves. They just keep going when they get too hot and they don't stop and they go right ahead and have it."

\* \* \* \* \* \*

"Q. Doctor, didn't you testify that you couldn't tell that heat was the cause of it? A. I said the cause of the heat was from the history. I said from the actual standpoint of the autopsy you couldn't.

"Q. You couldn't say? A. That's right.

"Q. You could not tell from the autopsy? A. Coronary occlusion was what caused it. As to the other, the heat, was from the history. I said that."

\* \* \* \* \* \*

"Q. And what, in your opinion, was the cause of the clot and of his death? A. I think over exertion and heat."

■ The evidence showed that deceased during the morning of his death, had been working in the gravel pit removing stones from the size of a man's fist to the size of a man's head, and some weighing as much as 15 pounds; that the temperature was around 90 degrees. Dr. Tull testified that these facts, together with the facts found at the autopsy, led him to the conclusion or opinion that the cause of Fillmon's death was over exertion and heat. In our opinion, the evidence was sufficient to support the finding and judgment of the court that E. L. Fillmon died as a result of a heat stroke.

It is true, as contended by appellant, that appellee had the burden of establishing that deceased was subjected to conditions in the course of his employment which were a greater hazard than which applied to the general public. Where the evidence shows that deceased was working in a gravel pit in a temperature of around 90 degrees, we do not feel that it can be said as a matter of law, that he was not subjected to a more hazardous condition than applied to the public generally. Hebert v. New Amsterdam Casualty Co., Tex. Com.App., 1 S.W.2d 608; American General Ins. Co. v. Webster, Tex.Civ.App., 118 S.W.2d 1082 (Writ Dis.); Guthrie v. Texas Employers' Ins. Ass'n, 146 Tex. 89, 203 S.W.2d 775.

Appellants further urge that Dr. Tull's expressed opinion that the cause of Fillmon's death was "over exertion and heat" is based on hearsay and is, therefore, not available in support of the judgment. The first question of that portion of Dr. Tull's testimony hereinabove set out contains the evidence complained of. One of the assumptions which the doctor was asked to make in answering the question was that Mr. Fillmon, on the night before his death, told his sister-in-law that "he was working in a gravel pit where it was extremely hot." There is no question but that testimony as to what deceased told his sister-in-law is hearsay evidence. It is apparent, however, that such hearsay statement to the effect that the weather was extremely hot did not, and could not, refer to the temperature on the day of his death because the statement was made the night before. It may be noted that the question then proceeded to assume that "the next day he went out where the temperature was around 90 degrees and worked in that gravel pit and they found him on the bank or side of that gravel pit dead * * *." It is undisput-

ed that the temperature at about 11 o'clock on the day in question was around 90 degrees and in our opinion, the testimony of the employee of the weather bureau in Abilene would support an assumption that the temperature in the gravel pit was in excess of 90 degrees. If an assumption based upon hearsay testimony does not conflict with the undisputed testimony of disinterested witnesses on the matter under consideration, it is apparent that no damage is done by its presence in the record. If such evidence is undisputed as to the existence of a fact, that fact may be assumed for the purpose of a hypothetical question even though hearsay testimony indicates the same fact.

The language "extremely hot" is indefinite and ordinarily expresses the sensation of the individual rather than an accurate or even approximate measure of the degree of temperature. Although such language might indicate a temperature well in excess of 90 degrees, it cannot, with assurance, be said to be in conflict with a statement that the temperature was "around 90 degrees." This is particularly true when the indefinite term "extremely hot" is used and then immediately followed by the specific statement or assumption that the temperature was "around 90 degrees in that gravel pit where they found him * * * dead." There can be no question but that the assumption which the doctor was asked to make was that the temperature was "around 90 degrees." This assumption was supported by the undisputed evidence of a disinterested witness. The fact that such hearsay testimony was included in the hypothetical question was improper but no objection was made and in our opinion, it was, under the circumstances, harmless.

The judgment of the trial court is affirmed.