## TEXAS EMPLOYERS' INS. ASS'N v. FRAZIER et al.

### No. 3024.

Court of Civil Appeals of Texas. Eastland.

May 29, 1953.

Rehearing Denied June 3, 1953.

Nelson, Montgomery, Robertson & Sellers, Wichita Falls, for appellant.

Scarborough, Yates, Scarborough & Black, Roy L. Duke, Abilene, for appellee.

LONG, Justice.

This is a Workmen's Compensation case brought by Sue Frazier and her minor son, Michael Don Frazier, against Texas Employers' Insurance Association, claiming compensation on account of the death of Burl Dean Frazier as a result of an injury alleged to have been sustained by him while working in the course of his employment for Wright, Clark and Senkel. The court, based upon a jury verdict, rendered judgment in favor of Sue Frazier and her son, Michael Don Frazier, awarding them 360 weeks of compensation payable weekly at the rate of $25. From this judgment, Texas Employers' Insurance Association has appealed.

Appellant urges the trial court erred in failing to instruct a verdict for appellant because there is no evidence or, in the alternative, insufficient evidence to support the jury finding that deceased sustained an accidental injury in the course of his employment.

The evidence shows that deceased, Burl Dean Frazier, was the husband of Sue Frazier and the father of Michael Don

Frazier; that Burl Dean Frazier was employed as a water pumper for Wright, Clark & Senkel, oil well drilling contractors. The lease where he was employed was located approximately eight miles southwest of the town of Woodson, Throckmorton County, Texas. It was the duty of Burl Dean Frazier to keep the wells thereon supplied with sufficient water with which to operate. The water for the wells was obtained from a tank located some distance from the wells from which tank a water line was run to the wells. A water pump was located at the tank.

On the morning of November 18, 1951, Burl Dean Frazier was found dead in his pick-up on this lease. The deceased was a young man approximately 23 years of age. He and his wife and son lived in a trailer house in the town of Woodson at the time of his death. Deceased was presumably in good health and had been well at all times except for a tonsil operation. He left his home about 3:00 o'clock on the afternoon of November 17, 1951 to go to the lease. He was seen on and about the lease that afternoon. It was his duty to look after the water line. The evidence shows that the weather at that time was extremely cold and that it was customary to drain the water line at night to keep it from freezing.

It is the theory of appellees that the death of Burl Dean Frazier was caused from heart failure which was brought on by exertion in doing his work on the lease. Betty Wells, a witness for appellees, testified that she was riding in the back of a pick-up late in the afternoon of November 17th and that she waved to deceased; that he was at that time near his pick-up down on his knees doing something on the pipes. There is evidence that it was necessary to use physical force to remove the plugs from the pipe. That the usual and customary way of removing the plugs was by the use of a Stilson wrench. There was a Stilson wrench in the back of the pick-up the next morning when it was discovered that Burl Dean Frazier was dead. There were some three or four plugs out of the water line the next morning. The gloves belonging to deceased were found near one

of these plugs that had been removed. Without quoting from all the testimony, we believe that it was established that the deceased had worked on the lease late in the afternoon of November 17, 1951. The evidence is sufficient to show that the work he was performing required physical exertion. At 8:00 o'clock in the evening of November 17th, Mrs. Dunlap, who lived near the lease, saw the pick-up truck near the water line with the head lights burning. The pick-up was in the same position and in the same place at about 7:00 o'clock in the morning of November 18, 1951, when the body of deceased was found. Mr. Merriman, the funeral director from Throckmorton, took charge of the body of deceased on the morning of November 18, 1951 and it was his testimony that deceased had been dead approximately eight to twelve hours. From the evidence it seems to us to be established that Burl Dean Frazier died at some time before 9:00 o'clock in the evening of November 17, 1951.

Some time after the burial of deceased, his grave was opened and Dr. Snow removed his heart from his body. He carried the heart to Abilene and performed an autopsy thereon. There were no signs of violence to the body of deceased. It was the opinion of Dr. Snow and Dr. Williams, who performed the autopsy, that he died from heart failure. They each testified that his heart was enlarged. Dr. Snow testified that exertion has the effect of putting a strain on the heart. He further testified that the heart of deceased was enlarged and had a clot in the left anterior vessel blocking the vessel. The doctor was asked a hypothetical question involving the facts surrounding the death of Frazier to which he replied that the type of strain inquired about in the question would be sufficient to cause sudden heart failure and death of deceased. It was his opinion that the clot found in the heart of deceased was caused by strain or exertion and that in the absence of such exertion, Frazier would not have died. Dr. Williams gave similar testimony.

We realize that in cases where the sufficiency of the evidence is assailed every case must stand upon its own facts. It is

our duty to disregard all adverse evidence and view the evidence in its most favorable light to appellees. We have examined many cases touching upon the question of sufficiency of the evidence in cases of this kind. We have concluded that the evidence is sufficient to support the verdict of the jury.

The deceased was the only pumper in charge of the water system on the lease involved. It was his duty to drain the water line when the weather was cold. The weather was cold on this occasion. Appellees showed by circumstances that he had been engaged in draining the lines on the afternoon and evening of his death. There is evidence that it required physical exertion to remove the plugs in the water line. The medical testimony shows that such exertion was likely to produce death to a person with an enlarged heart such as deceased had. We are of the opinion that the trial court did not err in overruling appellant's motion for an instructed verdict. We hold the evidence sufficient to take the case to the jury. Federal Underwriters Exchange v. Polson, Tex.Civ.App., 148 S.W.2d 956; Texas State Highway Department v. Fillmon, Tex.Civ.App., 236 S.W.2d 635, affirmed, Tex.Sup., 242 S.W.2d 172; Texas Employers' Ins. Ass'n v. Talmadge, Tex.Civ.App., 256 S.W.2d 945; Texas Employers' Ins. Ass'n v. Smith, Tex.Civ.App., 235 S.W.2d 234, Writ Ref.

By other points appellant complains of the action of the trial court in admitting in evidence over its objection the answers of Dr. Snow and Dr. Williams to certain hypothetical questions propounded to them. Appellees propounded the following hypothetical question to Dr. Jarrett E. Williams:

"Assuming in this case that we have a man 23 years of age who was employed in the oil field; and assuming that that man had an abnormal heart, such as the one that you found in connection with your examination with Dr. Snow of Burl Dean Frazier's heart; and assuming further that that man drove out to a pipeline he was doing some work on; that he walked 50 to 75 feet where he had a Stilson wrench; that he was engaged in doing something to a pipe; and assuming further that he walked back to that pickup a distance of 50 to 75 feet and that sometime later—5 or 6 hours later we'll say—he was found in the pickup. Assuming further that you later examined the man's heart and found a blood clot you heretofore testified about. State whether or not in your opinion and in all reasonable probability the walk over to the pipeline and the walk back the 50 or 75 feet was in your opinion the precipitating cause of death of that 23-year-old man."

A similar question was propounded to Dr. William R. Snow, witness for appellees. It is the contention of appellant that these hypothetical questions are not based on facts in the case. We do not agree with this contention. It is established that deceased was a man 23 years of age and he was employed in the oil fields. It is further established that he had an abnormal heart. There is evidence that he drove from his home in Woodson to the lease where the pipe line was located. He was in the pick-up the next morning and a Stilson wrench was found therein. He was seen by witnesses late in the afternoon engaged in working on the pipe line. His pick-up was a short distance away, thus it would be necessary for him to walk from the pick-up to the pipe line and walk back to his pick-up because he was found dead in the pick-up the next morning. We believe the questions follow substantially the facts and circumstances in evidence in the case. It is also urged by appellant that some of the questions asked Dr. Williams were leading and suggestive. We have examined these questions and if it should be held they are leading, we believe that the admission of the questions was within the discretion of the trial court and the trial court did not abuse its discretion in overruling the objection thereto. We have examined all points raised by appellant and find no merit in any of them and they are hereby overruled.

The judgment is affirmed.