

**Office of the Attorney General**
**State of Texas**

**DAN MORALES**
ATTORNEY GENERAL

May 13, 1992

Honorable Edmund Kuempel
Chairman
Committee on House Administration
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-117

Re: Whether, in a manufactured home credit transaction, V.T.C.S. article 5069-6A.08 allows a creditor to require a consumer to purchase the required insurance from an insurer of the creditor's choosing, and related questions (RQ-190)

Dear Representative Kuempel:

You ask several questions about article 5069-6A.08, V.T.C.S., a part of chapter 6A of the Texas Credit Code. Chapter 6A regulates credit sales and consumer loans for the purchase of manufactured homes.[1] See V.T.C.S. art. 5069-6A.01. Chapter 6A of article 5069 permits creditors that extend credit to or arrange credit for consumers for the purchase of manufactured homes to require the consumer to purchase physical damage insurance on "the property involved in a credit transaction."[2] V.T.C.S. art. 5069-6A.08(1). The creditor may finance as part

---

[1]Article 5069-6A.05(1), V.T.C.S., requires a creditor in a manufactured home credit transaction to comply with the federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., as implemented by regulation Z, 12 C.F.R. § 226.1 et seq. See V.T.C.S. arts. 5069-6A.01, 5069-6A.02(1). We limit our answer, however, to state law.

For purposes of chapter 6A, article 5069-6A.02(2), V.T.C.S., defines "[m]anufactured home" to include both manufactured and mobile homes, as well as "any furniture, appliances, drapes, carpets, wall coverings, or other items that are attached to or con⁺        in the dwelling and that are included in the cash price and sold in conjunction with the dwelling." V.T.C.S. art. 5069-6A.02(2)(a); see id. art. 5221f (Texas Manufactured Housing Standards Act).

[2]Article 5069-6A.02(c) defines "[c]reditor" as "a person involved in a credit transaction who: (i) extends or arranges for the extension of the credit; or (ii) is a retailer or broker, as defined by the Texas Manufactured Housing Standards Act, as amended . . . , and participates in arranging for the extension of credit." The Texas Manufactured Housing Standards Act in turn defines "[r]etailer" as

of the credit transaction the costs of the physical damage or property insurance that the creditor requires the consumer to purchase. *Id.* art. 5069-6A.08(4). The chapter also authorizes the creditor to finance as part of the credit transaction the costs of any other insurance coverage, such as credit life and credit health and accident insurance, that the consumer requests.[3] *Id.*

You first ask whether, if a consumer purchases the required insurance from someone other than the creditor, the creditor may demand that the consumer provide a one year paid-in-full insurance policy. We understand that by "required insurance" you mean physical damage or property insurance and that you use the word "demand" to indicate a situation in which, as a condition precedent to

---

(footnote continued)
"any person engaged in the business of buying for resale, selling, or exchanging manufactured homes or offering such for sale, exchange, or lease-purchase to consumers." V.T.C.S. art. 5221f, § 3(2). The Manufactured Housing Standards Act defines "[b]roker" as "a person engaged by one or more other persons to negotiate or offer to negotiate bargains or contracts for the sale, exchange, or lease-purchase of a manufactured home to which a certificate or document of title has been issued and is outstanding." *Id.* § 3(6). A broker differs from a retailer in that a retailer is a person who maintains a location for the display of manufactured homes. *Id.*

Article 5069-6A.02(2)(b) defines "[c]onsumer" as "a person to whom credit is extended in a credit transaction and includes a comaker, endorser, guarantor, surety, or other person that is obligated to repay the extension of credit."

Article 5069-6A.02(2)(d) defines "[c]redit transaction" as "a retail purchase of a manufactured home under which the consumer, in a credit document, grants to a creditor a purchase money lien on the manufactured home to secure the extension of credit that is subject to a finance charge or is payable by written agreement in more than four installments, not including a down payment, whether in connection with a sale, loan, or otherwise." "Credit document" refers to "the credit sale contract or the loan instruments and includes all the written agreements between the consumer and creditor that relate to the credit transaction." *Id.* art. 5069-6A.02(2)(e).

[3]Credit life insurance policies and credit accident and health insurance policies sold in connection with credit transactions of less than five years duration are regulated generally by article 3.53 of the Insurance Code. Ins. Code art. 3.53, § 2(2); Attorney General Opinion MW-511 (1982) at 3. We understand that manufactured home credit transactions rarely have a duration of less than five years, making the applicability of article 3.53 of the Insurance Code improbable. Furthermore, when a credit transaction falls under the specific coverage of the Texas Credit Code (which includes article 5069, chapter 6A, V.T.C.S.), the provisions in the Credit Code supersede contrary provisions of article 3.53 of the Insurance Code. Attorney General Opinion MW-511 at 4. For these two reasons, this opinion does not discuss at length the provisions of article 3.53.

extending financing, the creditor requires the consumer to purchase a one year paid-in-full insurance policy.

Article 5069-6A.08 permits a creditor to designate the property insurance coverage the consumer must obtain. *Id.* art. 5069-6A.08(1). While chapter 6A does not define "coverage,"[4] we understand that the industry uses the term[5] to refer to the amount and extent of the risk insured, not to the duration, or term, of the risk insured. BLACK'S LAW DICTIONARY 330 (5th ed. 1979); *id.* at 1193 (defining "risk" as "danger or hazard of a loss of the property insured; ... specified contingency or peril"); *cf.* 12 APPLEMAN, INSURANCE LAW AND PRACTICE § 7001, at 5 (rev. ed. 1981) (listing as element essential to insurance contract inclusion of risks insured against, and as essential element of all contracts, duration of contract). Thus, by its use of the word "coverage" subsection (1) does not explicitly preclude a creditor requiring a consumer to purchase an insurance policy of a term specified by the creditor.

Whether or not article 5069-6A.08(1), by its use of the word "coverage," permits a creditor to require an insurance policy of a specified term, we believe that another provision of chapter 6A implicitly permits a creditor to specify the term of the property insurance. Subsection (5) of article 5069-6A.08 mandates that, if the creditor is not financing the costs of the property insurance policy, the creditor must disclose in the credit document the term of the required property insurance. Subsection (5) thus impliedly permits a creditor to require a consumer to purchase a property insurance policy of a specified term. Additionally, chapter 6A.08 appears to contemplate that the creditor may require continuous coverage throughout the entire term of the credit transaction. V.T.C.S. art. 5069-6A.08(6) (stating that creditor may include any insurance premium included in the credit transaction and paid as part of the total of payments, "even if the term of the insurance is less than the term of the credit transaction"); *see* Attorney General Opinion MW-564 (1982).

---

[4]The federal Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, as implemented by regulation Z, 12 C.F.R. § 226.1 *et seq.*, also does not define "coverage." *See* V.T.C.S. arts. 5069-6A.02(1) (stating that except as otherwise defined in that section, words or phrases used in chapter 6A are defined in accordance with federal Truth-in-Lending Act and regulation Z), 5069-6A.05(1) (requiring creditor to comply with Truth-in-Lending Act as implemented by regulation Z).

[5]*See* Gov't Code § 312.002(b) (declaring that if statute uses word in reference to particular trade or subject matter, word shall have meaning experts in that trade or subject matter give).

Honorable Edmund Kuempel - Page 4 (DM-117)

We are unaware of any other state statute or rule that controls or bears on the length of term the creditor may require for property insurance coverage.

Additionally, we find no provision in chapter 6A or in any other state statute that precludes a creditor from requiring a paid-in-full policy. Although chapter 6A allows a creditor to require that a consumer insure the property involved in a credit transaction, that chapter addresses the time of payment of property insurance premiums only in connection with insurance escrows. V.T.C.S. art. 5069-6A.12(1), (2). Absent the establishment of an escrow arrangement, chapter 6A does not address the time of payment of insurance premiums. V.T.C.S. art. 5069-6A.08(1). Accordingly, we believe that a creditor may require the consumer to provide a paid-in-full property insurance policy.

Your second, third, and fourth questions are interconnected, and we will answer them together. In essence, you ask whether, when a creditor is willing to finance the required property insurance, the creditor must finance that insurance policy regardless of which insurance company the consumer chooses.[6] We note again that no state statute requires a creditor to finance a consumer's property insurance coverage. *See id.*; *supra* pp. 1-2. For those creditors that choose to finance the consumer's required property insurance, however, provisions in article 5069-6A and in the Insurance Code limit the creditor's rights.

We note that insurance agencies may be owned and operated by the same, or substantially the same, individuals who own and operate the creditor-lending

---

[6]Specifically, you ask:

> 2.) When a creditor is willing to finance the required insurance, can the creditor demand the consumer to purchase the required insurance from an insurer or agent of the creditor's choosing and exclude all other authorized Texas insurers or Texas licensed agents who can provide the identical required insurance?

> 3.) When a creditor is willing to finance the required insurance, shouldn't the creditor be obligated to finance the required insurance written by any authorized Texas insurer or Texas licensed agent the consumer chooses?

> 4.) When a consumer purchases the required insurance from someone other than the creditor, the creditor has the right for good cause to refuse to accept certain insurance policies from insurance companies designated by the creditor; what is good cause?

institution. Attorney General Opinion MW-564. Information submitted in response to your request states that sometimes a creditor that requires physical damage insurance will inform a consumer that the creditor will finance the required insurance, but only if the consumer purchases the insurance policy from the creditor or from an agent or insurance company the creditor selects. In our opinion, this practice violates article 5069-6A.08, V.T.C.S., as well as article 21.48A of the Insurance Code.

Article 5069-6A.08 does not explicitly forbid a creditor from requiring a consumer to purchase required insurance from the creditor or from an insurance agent or company of the creditor's choosing. However, subsection (2) of article 5069-6A.08, V.T.C.S., states in pertinent part as follows:

> When [a creditor requires a consumer to insure the collateral property], the creditor shall furnish to the consumer a statement that clearly and conspicuously states that insurance is required in connection with the transaction and that the consumer has the option of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in this state subject to the limitations of Subsection (9) of this section.

By requiring creditors to inform consumers that the consumer can purchase an insurance policy with coverage equivalent to that designated by the creditor from any insurance company authorized to do business in this state subject to the limitations articulated in subsection (9), see infra pp. 6-8, chapter 6A implicitly precludes a creditor from requiring a consumer to purchase insurance from a certain insurance agent or company.[7]

All lending institutions, including those extending credit in manufactured home credit transactions, are subject to article 21.48A. Compare Ins. Code art.

---

[7] Cf. 28 T.A.C. § 3.5101 (providing that, in context of certain loans or certain other credit transactions of less than five years duration, when creditor requires, pursuant to article 3.53 of the Insurance Code, credit life or credit accident and health insurance as additional security for indebtedness, person processing indebtedness transaction must advise debtor of debtor's right to procure required coverage from any insurer authorized to transact insurance business within this state).

21.48A, § 1(1) *with* V.T.C.S. art. 5069-6A.02(2)(c), (d).[8]  Article 21.48A provides as follows:

> No Lender shall *directly* or *indirectly* impose or require as a condition of any financing or lending of money or the renewal or the extension thereof, that the purchaser or borrower or his successors, shall procure any policy of insurance or the renewal or extension thereof, covering the property involved in the transaction, from or through any particular agent or agents, solicitor or solicitors, insurer or insurers, or any other person or persons, or from or through any particular type or class of any of the foregoing.

Ins. Code art. 21.48A, § 2(b) (emphasis added).  This provision, in conjunction with the definition of lender in article 21.48A of the Insurance Code, clearly bars a creditor, including a creditor in a manufactured home credit transaction, from requiring a consumer to purchase required property insurance from a specified agent or company as a condition precedent to the creditor's financing of the insurance premiums.[9]  Finally, the Texas legislature recently has reiterated its intent to prohibit insurance agents from coercing persons to purchase insurance from that agent, and to "preserve to each citizen the right to choose his own agent or insurance carrier."  Ins. Code art. 21.14, § 5 (as amended by Acts 1991, 72d Leg., ch. 242, § 11.74).  Clearly, the state policy is to forbid a creditor or an insurance agent from directly or indirectly requiring a person to purchase an insurance policy from an agent the creditor or insurance agent designates. *See also* V.T.C.S. arts. 5069-4.02(8) (stating that lender in installment loan transaction "shall not by any method, directly or indirectly, require the purchase of insurance from an agent or broker designated by the lender"), 5069-5.03(8) (same, but referring to lender in secondary mortgage loan transaction), 5069-6.04(6) (providing that buyer in retail

---

[8]Article 21.48A, section 1(1) of the Insurance Code defines "[l]ender" as "any person, partnership, corporation, association, or other entity, or any agent, loan agent, servicing agent, or any loan or mortgage broker, who lends money and receives or otherwise acquires a mortgage, lien, deed of trust, or any other security interest in or upon any real or personal property as security for such loan." *See supra* note 2 (defining "creditor" and "credit transaction").

[9]If a creditor violates article 21.48A, the attorney general, the commissioner of insurance, or the board of insurance therefore may seek to enjoin such a creditor from violating the article.  Ins. Code art. 21.48A, § 4(a).  Additionally, a consumer may recover civil damages from a creditor that violated section 2(b). *Id.* § 4(b).

installment sales transaction shall have privilege of selecting insurance company acceptable to seller or noteholder), 5069-7.06(3) (prohibiting entity financing motor vehicle installment loan from requiring, as condition of entity's financing motor vehicle, prospective purchaser to purchase required insurance coverage from any particular source). Accordingly, a creditor electing to finance the cost of property insurance must allow the consumer to procure and furnish "equivalent insurance coverages *through any insurance company authorized to transact business in this state* subject to the limitations of Subsection (9) of this section."[10] *Id.* art. 5069-6A.08(2) (emphasis added).

Under subsection (9) of article 5069-6A.08,

> [i]f the consumer procures required insurance from someone other than the creditor, the creditor has the right for *good cause* to refuse to accept certain insurance policies from insurance companies designated by the creditor. The reason for such a refusal shall, on request by the consumer, be set forth in writing and delivered to the consumer. [Emphasis added.]

"Good cause," as used in subsection (9), is undefined.[11] Your fourth question asks, therefore, what "good cause" means in this context. Initially, we note that a creditor always may refuse to accept insurance coverage that is not equivalent to the coverage the creditor requires. In connection with a creditor's ability to refuse insurance policies from insurance companies on grounds not related to equivalence, we look to article 21.48A of the Insurance Code for guidance as to the meaning of "good cause." As we have stated above, article 21.48A governs the conduct of all lenders, including those involved in manufactured home credit transactions. *See supra* p. 6. Section 3 of article 21.48A states that

> [n]othing contained in Section 2 hereof shall be deemed to prevent such Lender from:

---

[10]Whether the insurance coverage the consumer proffers is *equivalent* to the property insurance coverage the creditor requires is a question of fact that cannot be resolved in the opinion process.

[11]Neither chapter 6A nor applicable federal law defines "good cause." For cites to applicable federal provisions, *see supra* note 1.

....

> (c) refusing to accept or approve insurance in any particular insurer on reasonable and nondiscriminatory grounds relating to its financial soundness, or its facility to service the policy.

*See also* Attorney General Opinion H-1216 (1978). In 1969, the legislature amended section 3(c) to read as it does currently. Acts 1969, 61st Leg., ch. 428, § 2, at 1448. Consequently, the language of section 3(c) is identical now to its language in 1979, when the legislature enacted chapter 6A, article 5069, V.T.C.S. We presume that the legislature, when it enacted chapter 6A, was aware of the existence of article 21.48A, section 3(c) of the Insurance Code. Attorney General Opinion V-1215 (1951) at 2.

If "one statute deals with a subject in general terms, and another statute deals with a part of the same subject in a more detailed way, the two should be harmonized if possible." 2B SUTHERLAND STATUTORY CONSTRUCTION § 51.05 (5th ed. 1992). Article 21.48A of the Insurance Code regulates lenders generally, whereas chapter 6A, article 5069, V.T.C.S., regulates only creditors in manufactured home credit transactions. Both statutes preclude a lender who is willing to finance the cost of insuring the collateral from mandating that a borrower obtain insurance from a specified insurance agent or company. *See supra* pp. 5-7. *Compare* Ins. Code art. 21.48A, § 2(b) *with* V.T.C.S. art. 5069-6A.08(2). Additionally, both article 21.48A, section 3(c) of the Insurance Code and V.T.C.S. article 5069-6A.08(9) permit a lender to refuse, on limited grounds, the insurance company the consumer has selected. Under article 21.48A, section 3(c), the lender must base the refusal on "reasonable and nondiscriminatory grounds" relating only to the insurance company's financial soundness, or the insurance company's facility to service the policy. Under article 5069-6A.08, subsection (9), the lender must base the refusal on "good cause." We believe that the phrase "good cause," as used in article 5069-6A.08, subsection (9) should be construed so that subsection (9) is consistent with Insurance Code article 21.48A, section 3(c). Thus, a creditor in a manufactured home credit transaction cannot refuse to accept a property insurance policy from an insurance company of the consumer's choice unless the creditor has "reasonable and nondiscriminatory grounds" relating only to the insurance

company's financial soundness, or the insurance company's facility to service the policy.[12]

In your fifth question, you ask whether a creditor is required to finance any insurance allowed by chapter 6A if the consumer requests financing after the date of the credit transaction. By the phrase "any insurance allowed by Chapter 6A," you mean to include property insurance policies that the creditor may require, as well as any other insurance coverage the consumer may request. *See supra* notes 2-3 and accompanying text. As we indicated above, we find no requirement in chapter 6A or in any other state statute requiring a creditor to finance any insurance coverage, either before or after the date of the credit transaction. *See* V.T.C.S. art. 5069-6A.08(4) (stating that "creditor *may* finance as part of the credit transaction" any required or requested insurance) (emphasis added). Subsection (3) of article 5069-6A.08, however, permits a creditor and consumer to agree that the consumer will purchase any insurance allowed by chapter 6A after the date of the credit document and to agree to include the amount of the premium for any insurance in the unpaid balance. Subsection (3) does not require the creditor to finance insurance purchased after the date of the credit insurance. Indeed, subsection (3) expressly permits the consumer and creditor to agree that the consumer will purchase any additional insurance in accordance with an insurance premium financing agreement[13] and will be treated separately from the transaction. *See* Ins. Code ch. 24 (providing for financing of insurance premiums).

---

[12]Of course, whether in a specific situation a creditor has good cause to believe that a particular insurance company is not financially sound or that a particular insurance company will be unable to service a policy is a fact question, which we cannot answer in the opinion process. *See Texas State Highway Dep't v. Fillmon*, 236 S.W.2d 635, 637 (Tex. Civ. App.--Eastland, writ granted), *aff'd*, 242 S.W.2d 172 (1951).

[13]An insurance premium finance agreement is "an agreement by which an insured or prospective insured promises to pay to a premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance agent in payment of premium on an insurance contract." Ins. Code art. 24.01(2). Article 24.01(1) defines "insurance premium finance company" as

> (A) a person engaged in the business of making loans under this chapter by entering into premium finance agreements with insureds or prospective insureds . . . .

> (B) a person engaged in the business of acquiring premium finance agreements from insurance agents or brokers or other premium finance companies; or

Finally, you ask whether, when a creditor requires a consumer to purchase property insurance under article 5069-6A.08(1), the creditor can require the term of the policy to be longer than twelve months. As we stated in answer to your first question, we find no statutory limitation on the term of required property insurance. The legislature enacted the provision allowing a creditor to require insurance on the property to enable the creditor to protect its interests in the property. Logically, the creditor can require insurance on the property for as long as it has an interest in that property.

In conclusion, nothing in article 5069-6A.08, V.T.C.S., prohibits a creditor from requiring a consumer to purchase a paid-in-full property insurance policy for the term that the creditor selects. This result obtains whether the consumer acquires the insurance coverage before or after the date of the credit transaction. Additionally, V.T.C.S. article 5069-6A.08(2), (9), as well as article 21.48A, sections 2(b), 3(c) of the Insurance Code require a creditor to accept an insurance policy that provides coverage equivalent to the insurance coverage the creditor requires from any company that is authorized to transact business in Texas, unless the creditor has good cause to refuse. We also conclude that "good cause" means a reasonable and nondiscriminatory basis that relates solely to the financial soundness of the insurance company, or the insurance company's facility to service the policy.

## S U M M A R Y

Nothing in article 5069-6A.08, V.T.C.S., prohibits a creditor from requiring a consumer to purchase a paid-in-full property insurance policy or insurance for the term that the creditor selects. This result obtains whether the consumer acquires the insurance coverage before or after the date of the credit transaction. Additionally, V.T.C.S. article 5069-6A.08(2), (9), as well as article 21.48A, sections 2(b), 3(c) of the Insurance Code

---

(footnote continued)

(C) an insurance agent or broker making loans under this chapter who holds premium finance agreements made and delivered by insureds payable to him or her or his or her order.

Any entity wishing to engage in the business of insurance premium financing must be licensed by the State Board of Insurance. *Id.* art. 24.02. We are advised that a creditor in a manufactured home credit transaction generally is not licensed as a premium finance company.

require a creditor to accept a property insurance policy that provides coverage equivalent to the insurance coverage the creditor requires from any company that is authorized to transact business in Texas, unless the creditor has good cause to refuse. We conclude that "good cause" means a reasonable and nondiscriminatory basis that relates solely to the financial soundness of the insurance company, or the insurance company's facility to service the policy.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly Oltrogge
Assistant Attorney General