## TEXAS EMPLOYERS' INS. ASS'N v. TALMADGE.

### No. 4819.

Court of Civil Appeals of Texas. Beaumont, March 26, 1953.

Rehearing Denied April 15, 1953.

McAlister & Tucker, Nacogdoches, for appellant.

Fulmer & Fairchild, Nacogdoches, for appellee.

PER CURIAM.

This is a Workmen's Compensation case. Susie Ann Talmadge, appellee, the surviving wife of William N. Talmadge, deceased, recovered judgment in the District Court of Nacogdoches County, Texas, against the appellant, Texas Employers' Insurance Association, for death benefits under the Workmen's Compensation Law of the State of Texas because of the death of

William N. Talmadge, an employee of J. E. Stone Lumber Company. The case was tried before a jury upon special issues and judgment was entered in favor of the appellee on the verdict of the jury. After its motion for new trial was overruled, appellant duly perfected its appeal to this Court for review.

The appellant's ten Points of Error are as follows:

1. The error of the trial court in overruling and not sustaining defendant's special exceptions to the plaintiff's petition and in refusing to require of the plaintiff an allegation that the death of the said William N. Talmadge was due to a specific accidental personal injury in the course of his employment with J. E. Stone Lumber Company, thereby holding that it was permissible and sufficient in plaintiff's petition to allege that the death of the employee was due either to a fall or from accidental excessive physical exertion and strain or from a fall and excessive physical exertion and strain.

2. The error of the trial court in overruling and not granting the defendant's motion for an instructed verdict at the conclusion of the testimony because the evidence was insufficient to warrant the submission of an issue to the jury, the evidence having wholly failed to show any causal connection between the allegations of the plaintiff and the death of William N. Talmadge, or any causal connection between the fall as alleged by the plaintiff or excessive physical exertion or strain or a combination of both that was a producing cause of the death of William N. Talmadge.

3. The error of the trial court in not granting the defendant's motion for an instructed verdict at the conclusion of the testimony because the evidence wholly failed to show that the death of William N. Talmadge was due to an accidental personal injury sustained while in the course of his employment with J. E. Stone Lumber Company, the evidence showing conclusively that such death might probably have occurred by reason of different causes, and that it was not more reasonably probable that one of the causes was operative than the other.

4. The error of the trial court in overruling and not sustaining the defendant's motion for an instructed verdict at the conclusion of the testimony because the evidence wholly failed to show the cause of the death of William N. Talmadge, the only evidence of any probative force being that William N. Talmadge died while working for J. E. Stone Lumber Company, there being no evidence of the cause of such death.

5. The error of the trial court in overruling and not granting the defendant's motion for a judgment non obstante veredicto because the evidence wholly failed to discharge the burden of proof resting upon the plaintiff to establish that either the fall or excessive physical exertion or strain or a combination of both was the cause of the death of William N. Talmadge, and that his death naturally resulted from either of said causes or a combination of both, the only medical evidence being that of plaintiff's witness that the fall could not have caused the death and that he, said medical witness, did not know the cause of the death and could only give an opinion from a hypothetical question, and then assuming that his opinion was correct, that such a death could result from excessive labor, thereby pyramiding presumptions, not permissible under the law.

6. The error of the trial court in overruling and not granting the defendant's motion for a judgment non obstante veredicto because there was no evidence that the deceased, William N. Talmadge, sustained an accidental personal injury while in the course of his employment with J. E. Stone Lumber Company, the sole evidence being that William N. Talmadge died while working for J. E. Stone Lumber Company and the testimony of the plaintiff's own witnesses as to the cause of the death being based upon a presumption which was based on a presumption.

7. The error of the trial court in overruling and not sustaining the defendant's objections and exceptions to the charge and in not correcting said charge in conformity therewith, and in not submitting said case

to the jury on issues in conformity with the pleadings and not requiring the jury to find whether the death of William N. Talmadge was due to a fall or whether it was due to accidental excessive physical exertion and strain.

8. The error of the trial court in overruling and not sustaining defendant's objections and exceptions to the charge and in not correcting said charge in conformity therewith, and in submitting said case to the jury on issues requiring only a finding as to whether the deceased, William N. Talmadge, sustained an injury accidental in its nature while in the course of his employment, and not requiring a finding in conformity with the pleadings as to whether the deceased fell and whether his death was the result of such fall or whether his death resulted from a heart attack due to excessive physical exertion and strain.

9. The error of the trial court in overruling and not sustaining the defendant's objections and exceptions to the charge and in not correcting the same in conformity therewith and in submitting the case upon duplicitous issues and in assuming that the deceased, William N. Talmadge, sustained a fall resulting in an injury causing his death.

10. The error of the trial court in refusing to set aside the verdict of the jury and their answers to the issues submitted to them and grant the defendant a new trial because the evidence was wholly insufficient to warrant the finding of the jury to the effect that William N. Talmadge received an injury or an accidental injury while in the course of his employment with J. E. Stone Lumber Company.

The jury by its verdict in answer to the six Special Issues submitted found that (1) William N. Talmadge sustained an injury on or about January 9, 1950; (2) that such injury was accidental; (3) that such injury was sustained in the course of his employment for J. E. Stone Lumber Company; (4) that the death of William N. Talmadge occurred as a natural result of such injury; (5) that manifest hardship and injustice will result to Susie Ann Talmadge unless the compensation should be paid in a lump sum; and (6) that the death of William N. Talmadge was not caused solely by disease.

Appellant's first point, a complaint directed at the pleadings of the appellee, is overruled. The petition of appellee alleged that the deceased "fell backward, striking his head, neck and back with great violence upon and against a hard wooden floor, causing severe and fatal injuries to deceased's brain and spinal cord * * *," and in the alternative "that his death was produced and caused accidentally by excessive physical exertion and strain, which excessive physical exertion and strain produced and caused internal injuries to his heart and brain, rupturing his brain and straining his heart, rupturing it and causing coronary occlusion," or in the alternative that the death of the deceased resulted from the fall, together with excessive physical exertion and strain. The exceptions presented by the appellant to the trial court challenged the appellee's pleading, contending that the petition alleged the death of William N. Talmadge from natural causes and not from any accident; that the allegation that the deceased became over-exerted in doing an extraordinary amount of work and under unusual hazardous conditions is not an allegation of death from an accidental injury; that the petition alleges in one paragraph that the deceased fell and struck his head which caused his death and in another paragraph alleges that his death was not the result of a fall but was produced or caused by accidental excessive physical exertion and strain which caused internal injuries to his heart and brain. It argues that such alternative pleading does not discharge the burden of a plaintiff in a lawsuit to plead the nature of an accidental injury depended upon for recovery, but that such pleading places the burden upon the defendant and shifts the burden to such defendant to negative any cause of action on the part of the plaintiff for death resulting from an accidental injury. We think the pleading is sufficient, that it alleges in the alternative that the deceased fell and struck his head which caused his death, or that he suffered a coronary occlusion from over-exertion and strain which caused his death

or that as a result of both such coronary occlusion and fall the deceased came to his death. Alternative allegations of inconsistent theories are permitted by our rules. The defendant in such a case would not have the burden of proof, as is contended by the appellant, but on the other hand is simply required in defending his lawsuit to make whatever answer which he can by the proof brought forward by the plaintiff. Even though a plaintiff might allege a half dozen inconsistent grounds for recovery, if his evidence raised issues as to only two such grounds the defendant would then be required only to answer these two. If the appellant is contending under this point that death or injury to a workman caused by over-exertion and strain while working on his job is not an accidental injury, the argument is overruled. Since the decision in the Carter case, Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581, it has been well established that an accidental injury in the course of employment is shown by the evidence that the injury or death occurred while the employee was at work and was caused by strenuous physical exertion.

 Appellant's Points 7, 8 and 9 relate to its objections and exceptions to the charge of the court. These issues complain of the action of the trial court in submitting, as it did, Special Issues Nos. 1, 2 and 3, which, together, inquire whether the deceased suffered an accidental injury in the course of his employment. Appellant contends that because of the pleadings and the evidence the trial court should have submitted an issue inquiring of the jury whether the deceased suffered an injury by reason of a fall, and another issue as to whether he suffered an injury because of a coronary occlusion caused by strenuous physical exertion. Since the decision by the Supreme Court, opinion by Chief Justice Alexander, in Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280, it has been settled that it is sufficient in such a case for the trial court to submit an issue as to whether the employee sustained an accidental injury to his body on the occasion in question, without the necessity of setting out the various injuries mentioned in the pleadings. On this authority we overrule Points Nos. 7, 8 and 9.

The appellant's remaining Points Nos. 2, 3, 4, 5, 6, and 10 all are concerned with appellant's complaint as to the sufficiency of the evidence to support the verdict and judgment.

It is unquestioned that the deceased was a man about 64 or 65 years of age and was working at the sawmill of J. E. Stone Lumber Company in Nacogdoches County at the time of his death; that he was engaged in carpenter work repairing a dollyway, a wooden platform on which carts of lumber were transported about the grounds of the sawmill. Dr. E. P. McKinney was the only medical expert who testified and he testified in answer to hypothetical questions propounded to him by counsel for appellee. Various other witnesses who were working with or near the deceased at the time of his death testified as to what he was doing at the time and described the sudden fall upon the platform by the deceased and testified that he was dead by the time fellow workmen reached his side after the fall. Dr. McKinney's testimony in answer to questions by counsel for appellee and his answers on cross-examination were as follows:

"Q. We are dealing here, Dr. McKinney, with a man who was about 64 or 65 years of age; about six feet tall, or better, and who, while working on a dollyway run, he falls backwards his length striking his head upon a one-inch timber which is lifted some several inches on a block above the dollyway floor level and somewhere about the cervical area of the head and neck strikes that board when he falls. He has been working regularly before that time and there are no complaints of suffering, fatigue or exhaustion, and he works regularly every day with no complaints over a period of months. In fact, at no time before that has he made any indication or appearance of being a weak or an abnormal man, physically. One or two days before he has this fall he is required, along with some other men, to repair a broken dollyway run where it necessitates and in his case did involve his actually taking part in the handling of heavy timbers, such as

7 x 8 timbers, eight, ten and fourteen feet long, weighing several hundred pounds, and it involves carpenter work such as picking up strips of timber, hammering them, backing up nails in them, and those kind of things. He is in the process of doing some of that carpenter work at the time he has this fall, about three o'clock in the afternoon on Monday, and he has been engaged on the previous Sunday, which is the day before, in the handling of the heavy timbers and also on the morning of the Monday, the day of his death. That being what you have before you as a doctor to diagnose the cause of the man's death, I wish you would tell us in your own language what your diagnosis would be as to the cause, or contributing cause or causes of the man's death? A. It would be my opinion that the man probably suffered a coronary occlusion, or heart attack, and that in turn may have been aggravated or precipitated by his activities and by his unusual labors.

"Q. It may have been precipitated by what? A. By his activities and the unusual labors in handling the heavy timbers.

"Q. If it be a fact, Doctor, that he had never complained or shown any indications of fatigue or weakness or getting tired before the time he was in the process of doing this heavy work I am telling you about on Sunday and Monday, the date of his death, state whether, in your opinion, Doctor, if that be the case, and then if died with a coronary occlusion, that such physical exertion as I have described contributed to bring on the coronary occlusion? A. In this particular case, of course, we don't know, but in a general way I can answer the question that physical exertion does tend to bring on a coronary occlusion.

"Q. If that be the fact in this case, and assuming that only, would it not be your opinion that it did contribute to it in this case? A. I can only say that it may have.

"Q. If you knew Doctor that he didn't have a coronary occlusion, and you knew that he had suffered a fall such as I have just described to you, then state whether or not it would be your opinion that he died as a result of the fall itself? A. That

would be the inference, but you would want confirmation by an autopsy or otherwise to establish the true cause of death.

"Q. In other words, an autopsy could have been performed and made that would establish that definitely? A. I think so.

"Q. Of course, you were not called in, and knew nothing of it? A. No, sir.

"Q. The doctor who did the work at the time could have arranged for the autopsy, couldn't he? A. Yes, with the permission of his next of kin.

"Q. Now, Doctor, I take it that it is understood that a man might die from heart trouble lying right in bed? A. Yes, sir.

"Q. And he might die while not exerting at all? A. That is correct.

"Q. State whether or not it is known to medical science that physical exertion contributes to heart trouble? A. It does contribute to it.

"Q. And state whether, Doctor, it is known to the medical profession that physical exertion is more likely to contribute to and cause heart failure and heart weakness of an aged man than a younger one? A. Not necessarily; it is the exertion itself, but the age groups are the determining factors.

"Q. Maybe I didn't state my question clearly. I am having reference to the same type of work with reference to the severity of the exertion. Say a man my age has done the same type of physical exertion, strenuous physical exertion of the type of handling heavy timbers, and a man 65 years of age also did it. State whether or not such work is harder on the 65 year old man than it is on a younger man, as a rule? A. I think you can say that it is.

"Q. And since you have all of these elements here, Doctor, a man 65 years of age, and whether he had a perfectly normal heart for a man that age at that time or whether he did not, he was out there working. Now, if those facts as I gave you prevailed there as being the basis you have to go on in this case and he had been thrown into that heavy work, that heavy lifting and straining work there such as he did. He worked on Sunday all day doing that

type of work and on the following day, Monday, until Noon, and then continued with carpenter work until 3 o'clock Monday until he fell. If that be all of the evidence that you have to go by in diagnosing the case, as he may have been brought to your office, we will say, and if he had a coronary occlusion, state to the jury whether it is your opinion that the excessive exertion I have described contributed to the coronary occlusion? A. It may have, and probably did.

"Q. State to the jury, Doctor, that if we assume that he had a coronary occlusion brought on by his exertions, and he had this fall as I have described to you, the fact that the heart was affected, would be such that would make that blow of the fall more likely to result in death than if his heart had not been affected? A. No. I think not. I think the fall itself was due to the coronary occlusion he suffered there before he fell.

"Q. I don't believe I follow you. A. I think that the coronary occlusion occurred before he fell and that he fell as a result of the coronary occlusion and not otherwise.

"Q. That answers one question. I see now that you misunderstood my question. I will put it this way: Take a man out here and he gets this fall of the same severity and degree that Mr. Talmadge got, with nothing wrong with his heart—in other words, he stumbles and falls and there is nothing happening in his heart. That is one fellow. Now, say that same man has a coronary occlusion that may or may not kill him in itself, but because of the occlusion he is not able to stand on his feet and he falls and gets the same degree of a fall that I have described to you. Now, I want to know whether or not, in your opinion, would the heart factor make the fall more likely to result in death than otherwise. In other words, could both the fall and the coronary occlusion in this case, in your judgment, have played a part in his death? A. It could have, but more likely in this case the coronary occlusion was the direct cause of his death and the fall was incidental."

Cross-Examination

"Q. Doctor, in your opinion the fall had nothing to do with his death? A. It may have.

"Q. I say, in your opinion, it didn't, did it? A. No.

"Q. It is hardly likely that a man could hit something like that and die without leaving some indications? A. That is right.

"Q. That is, you could know it, so to speak, if he fell hard enough to kill himself, because it is almost impossible to do that without leaving some indications? A. You would expect blood from the ears and nose.

"Q. You would have to have a lot of indications there for the fall to be severe enough to kill him? A. Yes, sir."

 It is the contention of the appellant here that the testimony given by Dr. McKinney on cross-examination is to the effect that in his opinion the fall had nothing to do with the death of Mr. Talmadge, and that the appellee was bound by the testimony since she placed the witness on the stand and vouched for his credibility. We do not agree, since it is the general rule that opinion evidence is not conclusive of a fact issue and the testimony of Dr. McKinney was purely opinion evidence. His testimony that in his opinion the fall had nothing to do with the death of the deceased merely raised the fact issue on that point. Fry v. Dixie Motor Coach Corp., 142 Tex. 589, 180 S.W.2d 135, 138 and cases cited.

 The appellant also argues that the testimony of the doctor is not sufficient to support a finding that Mr. Talmadge died as a result of a heart attack or coronary occlusion brought about by excessive physical exertion and strain. It argues that his testimony is the result of basing one presumption upon another presumption, or an inference upon an inference, or an inference based upon mere possibility, surmise or conjecture. It says that a litigant may not prove a fact by this method of inference upon inference, etc. The rule of law as stated by the appellant is, as we

understand it, a correct general statement of the law. Dr. McKinney's testimony, however, must be regarded as expert or opinion evidence and comes within the exception to the rule forbidding inferences to be based upon inferences, as pointed out in the opinion of Southern Underwriters v. Hoopes, Tex.Civ.App., 120 S.W.2d 924. The facts as to the actual surrounding circumstances of Mr. Talmadge's death were in evidence upon the testimony of several of his fellow workmen. They testified as to the nature of the work he was doing at the time of his death, how he fell, and other such matters. Other witnesses testified as to his age and health, physical appearance and manner of working. The questions which were propounded to the doctor assumed the existence of these facts which were proved by the other witnesses and therefore his testimony is opinion evidence, based upon the existence of certain facts which were in evidence and was properly received. His opinion that the deceased probably did have a coronary occlusion and that strenuous physical exertion probably contributed to it was sufficient evidence in our opinion to establish that the deceased suffered an accidental injury in the course of his employment, which caused his death. The fact that the doctor used the words "may" and "probably" do not diminish the strength or value to the appellee of the opinion evidence as to the death of Mr. Talmadge. An expert witness should not be barred from expressing his opinion merely because he is not willing to state his conclusions with absolute certainty. The prevailing view is that the opinions of medical experts are admissible as to the cause which produced, or probably produced, or might have produced a certain physical condition. See Traders & General Insurance Co. v. Bass, by this Court, 193 S.W.2d 848 and cases cited. We think the opinions in two cases show facts to an extraordinary degree very similar to those of the present case. They are the cases of Federal Underwriters Exchange v. Polson, Tex.Civ.App., 148 S.W.2d 956 and Texas Employers Insurance Association v. Smith, Tex.Civ.App., 235 S.W.2d 234, writ refused. In both of these cases the deceased suffered a stroke or a heart attack while working at his job and the evidence adduced as to the cause of death was similar in many respects to the case under review. In both cases it was held that the evidence was sufficient as to the cause of death and that the findings of the jury and the judgment of the court were supported by the evidence. We have read the entire statement of facts in this case and are satisfied that the evidence was sufficient and that all of the points of the appellant which assail the sufficiency of the evidence must be overruled.

The judgment of the district court is affirmed.