King, Sharfstein & Rienstra, Beaumont, Tex., for appellant.

Alto Watson, Beaumont, Tex., for appellee.

The AETNA CASUALTY & SURETY
COMPANY, Appellant,

v.

Mrs. LaVivian CALHOUN et al., Appellees.

No. 6955.

Court of Civil Appeals of Texas.

Beaumont.

March 28, 1968.

Rehearing Denied April 17, 1968.

STEPHENSON, Justice.

This is an action for death benefits brought under the Workmen's Compensation Act. Judgment was for plaintiff upon the finding made by the jury. The parties will be referred to here as they were in the trial court.

Plaintiff's petition contained the following allegations:

"Herbert E. Calhoun died on the 6th day of August, 1963. The immediate cause of his death was an acute coronary occlusion. This acute coronary occlusion arose out of his employment and the work he was doing for his employer from incidents directly traceable as to time, place and cause beginning some three weeks prior to his death, when he was taking welding tests overhead and suffered physical strain on such occasion, resulting in the origin of the said coronary occlusion and subsequent strains, finally resulting in his death."

Defendant answered with a general denial and the following:

"For further answer herein, defendant says that the death of Herbert E. Calhoun was solely and alone caused by natural conditions, diseases or other injuries of his body in nowise caused or aggravated by any occurrence suffered by said deceased while he was working for E. I. duPont de Nemours & Company."

The jury found: That Herbert Calhoun underwent stress and exertion between July

22 and August 5, 1963. That he sustained some injury to his body as a natural result of such stress and exertion. That such injury was sustained in the course of his employment. That such injury was a producing cause of his death. That he did not suffer from the disease of arteriosclerosis or hardening of the arteries.

The most serious points of error involved in this appeal are that there was no evidence and insufficient evidence to support the findings of the jury that Herbert Calhoun sustained a personal injury in the course of his employment. We consider only the evidence favorable to this finding by the jury in passing upon this "no-evidence" point.

The charge of the trial court defined the term "injury sustained in the course of employment" as set forth in Article 8309, Sec. 1, Vernon's Ann.Civ.St., except it added the words "whether internal or external." The term "injury" or "personal injury" was given by the court in its charge as set out in Article 8306 Sec. 20, V.A.C.S., except the following was added: "or the incitement, acceleration and aggravation of any disease or condition previously existing by reason of any damage or harm to the physical structure of the body."

The law in the State of Texas applicable to the factual situation in the present case is now well-settled. In Midwestern Insurance Company v. Wagner, Tex.Civ.App., 370 S. W.2d 779, it is written:

"A heart attack caused by such a strain or overexertion is an accidental injury to the physical structure of the body within the meaning of the workman's compensation law. Proof thereof, occurring in the course of employment, is sufficient to show a causal connection between injury and an employee's death resulting from such a heart attack."

Also see, Texas Employers' Ins. Ass'n v. Talmadge, Tex.Civ.App., 256 S.W.2d 945, as follows:

"If the appellant is contending under this point that death or injury to a workman caused by overexertion and strain while working on his job is not an accidental injury, the argument is overruled. Since the decision in the Carter case, Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S. W.2d 581, it has been well established that an accidental injury in the course of employment is shown by the evidence that the injury or death occurred while the employee was at work and was caused by strenuous physical exertion."

The fact that this incident covered a period of some fifteen days, see the case of Aetna Casualty & Surety Company v. Scruggs, Tex.Civ.App., 413 S.W.2d 416:

"In its brief and oral argument, appellant took the position that in order to recover, appellee must prove that his heart attack occurred while he was at work on the afternoon of February 26. Appellant contends that under the evidence the coronary occlusion did not take place until just before appellee entered the hospital on the evening of February 27. However, it is actually immaterial when the heart attack, or coronary occlusion, happened if the evidence is sufficient to raise a fact issue that an accidental injury occurred on February 26 while he was within the course of his employment which triggered or set in motion a series of events which were the producing cause of appellee's ultimate disability. That a strain or exertion is an accidental injury within the meaning of the Workmen's Compensation Law of Texas is not open for dispute."

It was stipulated that Herbert Calhoun was given a physical examination by a company doctor before going to work for the employer involved in this case. Such examination was made June 10, 1963 and the report was admitted in evidence. The medical evidence in reference to such report was as follows: That there was no evidence of heart disease. That the blood pressure was normal at 120/78 which indicated no hypertensive cardiovascular disease. That the examination of the eyes revealed no arterio-

sclerotic changes in the vessels of the eyes and no changes due to hypertensive disease. That the report showed a perfectly healthy man with none of the ordinary things that precipitate heart attacks. It was also stipulated that Herbert Calhoun took the welding test involved here July 22, 1963, and that he died August 6, 1963 and the cause of his death was coronary occlusion.

The witness, Paul Gomer, testified: He had been working on the same job with Herbert Calhoun at the time of his death, both being employed as millwrights. He had been a millwright for 41 years and was familiar with that type of work. He had lunch with Herbert Calhoun the day Calhoun took the welding test in issue. He knew what an overhead welding test was. A lot of good welders failed a welding test at times. A welding test is nerve-racking. If you are not used to welding, an overhead welding test especially will get on your nerves and get on them bad. There is some mental stress involved in taking a test. When welding overhead, you are going to become physically nervous. There is physical exertion involved. When Herbert Calhoun came back from the welding test at the noon hour, he was wet with sweat. Calhoun looked bad, he looked all pale and his eyes looked bad. Calhoun asked Gomer for a Rolaid and said "I'm a burning up with heartburn." Calhoun did not eat lunch and complained of pains in his chest. Calhoun held his hand over his left chest and said "I'm burning up inside right there." Calhoun had 30 minutes off for lunch and went back to finish the welding test. Calhoun had not dried off when the 30 minutes were over. Gomer and Calhoun worked together in the basement the day before Calhoun's death. They were installing conveyors. Conveyors are so heavy that sometimes it took six men to handle them. It would take four to six men to get them in the basement. Two men couldn't handle them in the basement, but they did shove them around. This was manual labor, you had to move them by hand. The day before his death, Calhoun complained about having heartburn so bad

he could hardly breathe. They had lunch together that day.

The witness, Buford Calhoun, testified: He was Herbert Calhoun's son, and had worked with his father from the time they began this job, June 10, 1963, until his death. They worked together as a team the biggest part of the time. His father was in good health when they started on this job. They were working together the day his father took the welding test, but he did not see his father during the noon hour. He saw his father after the welding test was finished at about 2:00 or 2:30. His father was wet with sweat and nervous and said his chest was hurting. His father told him he was burning in the chest, that he had indigestion, heartburn and his left arm was hurting. His father told him he could hardly pick up his left arm. His father had never complained of pains in his chest or his left arm before that day. His father continued to complain of pain in his chest and left arm every day. They worked together on conveyors the day before his father's death. The conveyors weighed from 250 to 600 pounds. They would line them up and set them in position. It was extremely hard work, about the hardest thing a millwright has to do. It is extreme exertion. His father got so weak one time he had to stop and rest, and complained he had a burning in his chest and said it was getting worse. He was white, weak, nervous and shaking. He got his father a cold drink while he was resting 10 or 15 minutes. They went together the next day to Newton to an unemployment hearing. At the hearing there was no excitement, it was just a discussion, and no one was nervous, excited or upset. During the conference his father became pale, broke out with a sweat and said "I'm burning up with indigestion, heartburn. I'm going to have to go sit by the window." The hearing was cut short, and they, he and his father, walked down the stairs to the car and rode a block and a half to the doctor's office. His father died in the doctor's office.

The plaintiff testified: She was the widow of Herbert Calhoun. His health had been good during their 29 years of married life except for typhoid fever and a hernia operation. The state of his health was good when he went to work for this employer in 1963. He had never made complaints of burning in his chest or pain in his arm before July 22, 1963. When he came home from work the day he took the welding test, he complained of a burning sensation and pain in his chest and down his left arm, which he had never complained of before. He continued to complain of those pains until his death. When he came home from work the day before he died, he was pale and sick and did not eat supper. He was having trouble breathing.

George D. Haynes testified: He was the person who gave Herbert Calhoun the welding test on July 22, 1963. The test was taken in the pipe shop. There were three sets of test plates to be welded, one vertical, one horizontal and one overhead.

Dr. Bobby Mack Via testified: He did not know and had never treated Herbert Calhoun. In answer to a hypothetical question, in his opinion, Herbert Calhoun probably suffered damage or harm to his heart on July 22, 1963. Calhoun had what a layman would call a heart attack and he would call a myocardial ischemia. That means the blood vessel that supplies oxygen to the heart is cut off and the heart fibers die. It is a progressive disease process, which, in the doctor's opinion, Calhoun suffered. It began on July 22, 1963, the day of the welding test. That people often have sweating, cold sweat and pallor due to the drop in the blood pressure and the pain. Continuing to do strenuous work aggravates the condition and makes it worse. Heavy work the day before death had something to do with his dying as it was a progressive process. Exertion and stress are producing causes of angina. His activities were the precipitating factor and a producing cause of his death. All of this evidence supported the findings of the jury that Herbert Calhoun sustained a personal injury in the course of his employment. The "no-evidence" point is overruled.

In passing upon the point of error that there is insufficient evidence to support such finding of the jury, we consider the entire record. There is much evidence, both lay and medical, contrary to such finding, but this evidence did no more than raise a question of fact for the jury to determine, which it did favorably to plaintiff. Such finding is not clearly wrong or manifestly unjust. The point of error is overruled.

We find the other points of error to be without merit and they are overruled.

Affirmed.