PAN AMERICAN FIRE & CASUALTY COMPANY, Appellant,

v.

Irene Bernice REED, Appellee.

No. 7896.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 30, 1968.

Rehearing Denied Feb. 3, 1969.

McCown, Sheehan & Dubuque, Frank D. McCown, Dumas, of counsel, for appellant.

Linn, Helms & Countiss, Spearman, Richard N. Countiss, Spearman, of counsel, for appellee.

DENTON, Chief Justice.

This is a suit for death benefits under the Workmen's Compensation Act. The trial court, without a jury, rendered judgment for the plaintiff below.

Arthur Dwight Reed, the deceased, was a 57-year-old truck driver employed by Super Service, Inc. of Spearman, Texas. On December 27, 1966, the day of his death, Reed had reported to work between 7 and 8 a. m. It was a cold day with some snow on the ground. His usual assignment was to haul salt water in one of his employer's large trucks with a 5500-gallon tank. There is no direct testimony that he did this that morning, but his employer and fellow employees testified he drove a similar truck to a refinery that afternoon and obtained a load of butane. This involved a round trip of approximately 106 miles. He arrived at his employer's storage area at approxi-

mately 5:00 o'clock p. m. He unhooked the trailer loaded with butane and left the trailer in this storage area. He was assisted in this operation by Roy Dry, a fellow employee. Reed then drove the tractor approximately two miles to his employer's office in Spearman, arriving there at approximately 5:30 p. m. Another employee, Herschal Ooley, saw Reed as he pulled up on the lot. They discussed the weather and Reed told Ooley that he believed he would drain the pump on the tank used for hauling salt water. They parted and some 30 minutes later Ooley saw Reed lying on the ground in front of his truck. Reed was pronounced dead at the scene by a local physician.

In its findings of fact and conclusions of law, the trial court found: that Reed suffered a heart attack on December 27, 1966 and that such attack was the cause of his death; that the heart attack was caused by strain and overexertion; that it was accidental and was sustained in the course of his employment; that such work, in the course of his employment, was the producing cause of his heart attack; and the death of Reed was not due solely to disease wholly independent of the injuries sustained by him.

■ Appellant contends there is no evidence and insufficient evidence to support the trial court's findings that Arthur Reed suffered a heart attack, and that this was the cause of his death; that the heart attack was caused by strain and overexertion; and that the work being performed by Reed was the producing cause of his heart attack. It is well settled that a heart attack caused by strain or overexertion is an accidental injury to the physical structure of the body within the meaning of the Workmen's Compensation Act. Proof thereof, which occurred in the course of employment, is sufficient to show a causal connection between the injury and the employee's death resulting from such heart attack. Midwestern Insurance Company v. Wagner (Tex.Civ.App.) 370 S.W.2d 779

(n. r. e.). Texas Employers' Insurance Association v. Talmadge (Tex.Civ.App.) 256 S.W.2d 945 (n. r. e.). Aetna Casualty & Surety Company v. Calhoun (Tex.Civ. App.) 426 S.W.2d 655 (n. r. e.).

■ We shall first consider only the evidence favorable to the findings in considering the "no evidence" points. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Higginbotham v. O'Keefe (Tex.Civ. App.) 340 S.W.2d 350 (ref. n. r. e.). Approximately 30 or 40 minutes prior to his death, Reed drove the large trailer-tractor upon his employer's storage yard. Roy Dry, a fellow employee, was present and assisted Reed in unhooking the trailer. This consisted of placing blocks under the tractor to prevent it from moving; lowering the "dolly"; and unhooking the fifth wheel. This required the operator to lower the dolly or legs of the trailer in order for them to support the trailer when the tractor was driven out from under it. The disengaging and lowering of the legs required stooping and bending underneath the trailer and some "pulling and pushing". The trailer's right leg had been previously bent and "some times" it caused difficulty to disengage and place it in the proper position. When this was completed Reed then drove the tractor some two miles to his employer's office. He and Ooley discussed the weather. Ooley told him: "Well, Arthur, according to the radio it is supposed to get pretty cold." Reed replied: "Well, I believe I will go around there and drain the pump", referring to the pump on the truck which was used for hauling salt water, to prevent it from freezing. This was done by opening a "quick snap-on" valve and pulling a hose out of the connection. Ooley testified it is "difficult to pull the hose out because the hose for that trailer was too long * * * it had to be crinkled up to make it fit." In describing the position one would take to disconnect the hose, Ooley testified: "Well, he would have to get in under his trailer and reach in up to his tractor and take both valves loose and then pull that hose out of that valve and lay it

on the ground so it will drain." Ooley did not see Reed drain the pump on this occasion, but after he discovered Reed's body he noticed the hose was unhooked and water was on the ground. He saw no one else in the vicinity.

Dr. Gregg, Reed's family physician, and Dr. Kleeberger testified for the appellee as medical experts. Dr. Gregg had treated Reed previously from time to time. He was called to the scene and pronounced Reed dead. In answer to a hypothetical question he testified in his opinion Reed died of a myocardial infarction, commonly called a heart attack. His testimony concerning the cause of the heart attack was: "My opinion would be that he previously had some sort of * * * a certain amount of coronary vessel disease. I would be of the opinion that because of his increased activity, demanding an increased work load on his heart, that the blood supply was not present and that was the cause of his death." In response to a similar hypothetical question, Dr. Kleeberger testified: "Under such circumstances and conditions, in my opinion, I believe it would be reasonable and logical to conclude that he apparently had an acute coronary occlusion, myocardial infarction, which caused his death." This latter opinion was based on medical probability.

■ Appellant objected to the hypothetical question propounded to both doctors on the ground they assumed facts not proven; and the question did not call for an opinion based upon medical probability. It is well settled a medical expert may base his own opinion upon an observation of the facts, or an assumed state of facts which the evidence tends to establish, partly on facts within his own knowledge and partly on facts shown by the testimony of others. Texas State Highway Department v. Fillmon, 150 Tex. 460, 242 S.W.2d 172. Missouri Pacific Railroad Company v. Willingham (Tex.Civ.App.) 348 S.W.2d 764. We have examined the facts assumed in the hypothetical questions. We do not find them in variance with the testimony offered by other witnesses. It is not necessary that the hypothetical question contain every fact in evidence. It is within the province of counsel to assume, within the limits of the evidence, a state of facts which he contends the evidence justifies and which enables the witnesses to form an intelligent answer from the facts assumed. Aetna Casualty & Surety Company v. Scruggs (Tex.Civ. App.) 413 S.W.2d 416. Insurance Company of North America v. Pittser (Tex.Civ.App.) 399 S.W.2d 901 (n. r. e.). The objection to Dr. Gregg's opinion was it was not based on reasonable probability. He had an opinion, assumed the facts set out in the hypothetical question, and that opinion was Reed died of a myocardial infarction. This evidence was admissible. It is the substance rather than the form of the testimony that is determinable. Otis Elevator Company v. Woods, 436 S.W.2d 324 (Sup.Ct.). We think the context of Dr. Gregg's testimony clearly showed that when he used the word "could" or "probably" he was using it in the sense of reasonable medical probability. The question propounded to Dr. Kleeberger was so formed as to base his opinion on reasonable medical probability.

■ It is evident Reed died almost instantaneously, on his employer's premises, and in the course of his employment. Both medical witnesses, assuming the facts outlined in the hypothetical question, together with facts they had of Reed's past medical history, testified Reed suffered a heart attack; which was the cause of his death; that such heart attack was caused by strain and overexertion just prior to the attack. From the nature of the case, much of the evidence was circumstantial or based on the answers of the two medical witnesses to hypothetical questions, nevertheless, we are of the view there was evidence to support the trial court's findings that support the judgment for the plaintiff below.

Although appellant offered no evidence, it contends the evidence presented left the question of causal relation between the heart attack and Reed's employment to specula-

tion. We do not agree. When considering all the evidence we are of the view that fact issues were raised for the trial court to determine, which it did, favorably to the plaintiff below. We cannot say such findings were clearly wrong or manifestly unjust.

The judgment of the trial court is affirmed.