**The STANDARD FIRE INSURANCE COMPANY, Appellant,**

v.

**Freda SULLIVAN et al., Appellees.**

**No. 7985.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 3, 1969.

Rehearing Denied Dec. 1, 1969.

———◆———

Evans, Pharr, Trout & Jones and Carlton B. Dodson, Lubbock, for appellant.

Key, Carr, Evans & Fouts and Donald M. Hunt, Lubbock, for appellees.

DENTON, Chief Justice.

This is a suit for death benefits under the Workmen's Compensation Act. The trial court entered judgment on the jury verdict for the plaintiffs.

O. B. Sullivan, Jr., the deceased, was employed as a field foreman for the Union Oil Company of California. His duties consisted of general supervision of his employer's oil leases in a rather extensive area surrounding Smyer, Hockley County, Texas. On July 18, 1967, the day of his death, Sullivan began his work day at 7 o'clock A.M. His work required a good

deal of driving from lease to lease. He was seen by several persons as he supervised work around the lease. A roustabout crew had been employed by Sullivan to hoe weeds around well locations and tank batteries, Sullivan started them on the job in the morning on the Ellwood lease, whereupon he left. He returned to his home in Smyer for lunch, and after a short rest returned to the leases. Daryl White "pusher" of the Roustabout Crew later saw Sullivan at a well location on the Ellwood lease at approximately 4:00 P.M. that day. Sullivan was "leaning against the Sampson post" of the pumping unit and "was kind of hunched with his arm across his chest," and complained to White that his "left arm felt like it was about to fall off, and he hurt so bad he couldn't hardly breathe." White testified Sullivan told him he was operating a tractor when "it hit him and he got off to rest." Sullivan again got on the tractor and tried to start it, and "it hit him again and he got off again." At Sullivan's request, White gave him some oxygen from an acetylene bottle on their truck. This seemed to relieve him. White then took Sullivan to his pickup some three-quarter miles away and Sullivan drove off. At approximately 6:30 P.M. Mrs. Sullivan returned to their home and found her husband lying on the bed. He appeared unconscious. He was then taken by ambulance to a Lubbock hospital where he was pronounced dead by Dr. Basil Moss, their family physician. An autopsy report revealed Sullivan's death was caused by myocardial infarction, commonly called a heart attack.

The jury found Sullivan sustained an accidental personal injury on the day in question; that such injury was sustained while working as an employee of the Union Oil Company of California; that the injury was sustained in the course of his employment; and that Sullivan's death was the result of such accidental personal injury.

It is appellant's contention that there is no evidence and insufficient evidence to support the jury findings to the four special issues submitted; and there is no evidence showing any causal connection between the heart attack and Sullivan's work.

It is uncontradicted that the deceased suffered from myocardial infarction which resulted in his death. It is further undisputed he suffered an attack while on the job during the afternoon some two or three hours before his death. The question to be determined is the matter of proof of causal connection between the heart attack and Sullivan's employment. It is well settled that a heart attack caused by strain or over exertion is an accidental injury to the physical structure of the body within the meaning of the Workmen's Compensation Act. Proof thereof, which occurred in the course of employment, is sufficient to show a causal connection between the injury and the employee's death resulting from such heart attack. Midwestern Insurance Company v. Wagner (Tex.Civ.App.) 370 S.W.2d 779 (ref., n. r. e.); Aetna Casualty & Surety Company v. Calhoun (Tex.Civ. App.) 426 S.W.2d 655 (ref., n. r. e.); Pan American Fire & Casualty Co. v. Reed (Tex.Civ.App.) 436 S.W.2d 561 (ref., n. r. e.).

Sullivan, 41 years of age, was an active and energetic man. His job required a great deal of driving to inspect and supervise the several leases owned by his employer. It was not uncommon for him to assist the other employees in their work. He ordinarily drove approximately 300 miles per day and as much as 500 miles on other days. He worked seven days a week and often ten or twelve hours a day. Several witnesses who saw Sullivan on the day of his death described him as appearing "dirty and sweaty looking" on that hot July day. He was seen on several lease sites during the day, although no one testified that he saw Sullivan actually operating a tractor used on the leases for blading weeds around the wells or tank batteries. Shultz, a fellow employee, did see Sullivan sitting on a tractor with its engine running about noon near the company office. Shultz testified he discovered on

the day after Sullivan's death that weeds had been bladed around nine wells and two tank batteries the day before. Shultz, whose job was to assist in this type work, testified he did not do this blading, and he testified Sullivan was the only other employee who was allowed to operate the tractor around the well sites. He explained this by saying "it would have been hazardous or dangerous to equipment or those valves to let anyone else." This testimony clearly related to White's testiment concerning observations of Sullivan in the afternoon, and Sullivan's statement to him concerning pain in his left arm and his remark "it hit him" while operating a tractor.

 In response to a hypothetical question, Dr. Moss who had treated Sullivan previously for high blood pressure, testified that based upon "reasonable medical certainty and probability" Sullivan "suffered a cardiac infarction on the day of his death between 1:30 and 4:30 in the afternoon as a result of the work he did that day". Based on the same medical probability, Dr. Moss testified "his pre-existing heart condition was aggravated by this cause." On cross-examination the doctor said a blood clot "could have" started forming before Sullivan began work on that day, but he did not alter his previous testimony that the cardiac infarction was suffered during the afternoon of that working day. We do not think the medical testimony illicited from Dr. Moss on cross-examination materially minimized the substance of his testimony previously referred to. We are impressed with Dr. Moss' forthright and explicit testimony. He had treated Sullivan for some ten years for various ailments including high blood pressure, but he testified that the latter condition in itself was not indicative of a coronary artery disease. In fact, Dr. Moss had not suspected coronary disease until he examined the autopsy report showing Sullivan suffered from arteriosclerosis or "hardening of the arteries." There is no evidence Sullivan was ever treated for this condition. We think the testimony is entirely sufficient to comply with the rule requiring reasonable medical probability for causation announced in Insurance Company of North America v. Myers (Tex.Sup. 1966) 411 S.W.2d 710, and Otis Elevator Company v. Wood (Tex.Sup.1968) 436 S. W.2d 324. See also Insurance Company of North America v. Kneten (Tex.Sup.1969) 440 S.W.2d 52.

From the very nature of this case much of the evidence was circumstantial or based on answers by the medical witness to hypothetical questions, nevertheless, we think in viewing the evidence favorable to the findings there was probative evidence to support the jury findings that support the judgment for the plaintiff.

In considering all the evidence we are of the opinion fact issues were raised for the jury to determine, which it did favorably to the plaintiff: We cannot say such findings were clearly wrong, or manifestly unjust.

The judgment of the trial court is affirmed.