**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Willie Mae ROGERS et al., Appellees.**

No. 4626.

Court of Civil Appeals of Texas,
Eastland.

June 29, 1973.

Rehearing Denied July 20, 1973.

Richard U. Simon, Brown, Crowley, Simon & Peebles, Fort Worth, for appellant.

Davis Scarborough, Scarborough, Black, Tarpley & Scarborough, Abilene, Dewey Cox, Jr., Ranger, for appellees.

McCLOUD, Chief Justice.

This is a suit for workmen's compensation death benefits. Willie Mae Rogers, individually and as next friend of her minor son, Leslie Claude Rogers, sued Liberty Mutual Insurance Company, compensation carrier for Stuckey's Inc., alleging that E. C. Rogers, husband of Willie Mae Rogers and father of Leslie Claude Rogers, died from a heart attack precipitated by strain or exertion while in the course of his employment for Stuckey's. The jury found in favor of the widow and minor child. Liberty Mutual Insurance Company has appealed. We affirm.

**500**

Liberty Mutual appeals on two points of error. The first point states: "The court erred in overruling Defendant's Motion for Directed Verdict, in submitting the case to the jury, and rendering judgment for the Plaintiffs." This point is vague, general and multifarious. Rule 418, Texas Rules of Civil Procedure; Tindall v. Tacconelly, 328 S.W.2d 909 (Tex. Civ.App.—San Antonio 1959, writ ref'd n. r. e.). We are, however, required to look to the statement, argument and authorities under the point to determine if the point can be considered. Fambrough v. Wagley, 140 Tex. 577, 1, 169 S.W.2d 478 (1943); Carswell v. Southwestern Bell Telephone Company, 449 S.W.2d 805 (Tex.Civ.App. —Houston (1st Dist.) 1969, no writ hist.). Applying the rule announced in Fambrough, *supra,* we will consider the first point as a no evidence point of error. No Evidence and Insufficient Evidence Points of Error, Calvert, 38 Tex.Law Review 361 (1960). Liberty Mutual argues in its first point that the trial court erred in overruling its motion for directed verdict because there was no evidence that Rogers suffered a coronary arrest precipitated by strain or overexertion which was a producing cause of his death.

The evidence shows that Rogers and his wife operated a Stuckey's store near Strawn, Texas, which principally sold food, candy, novelties, gas, and oil. Rogers had been operating the store approximately nine months before the attack which resulted in his death. After moving to the Strawn store, Rogers started complaining of dizziness and blurred vision. Prior to that time he had not complained of such symptoms. There is evidence that the dizziness and blurred vision interfered with his work. Approximately six months before his death, Rogers developed a nose bleed which could not be controlled and he went to see Dr. Gohlke. Dr. Gohlke diagnosed Rogers' problem as high blood pressure. The doctor prescribed medication and advised Rogers to slow down. Subsequent medical examinations disclosed that the high blood pressure had lowered within normal range. Rogers continued to take the prescribed medicine. On the day before his death, while at work, Rogers again complained of dizziness and blurred vision. He leaned against the counter until the symptoms passed. On the day of his death, Rogers had been working in the store for approximately twelve hours. Immediately prior to the attack he had been mopping the floor with an "industrial mop" described as being heavier than an ordinary mop. There is testimony that he had been mopping for fifteen or twenty minutes when a customer drove up for service. He laid the mop down, went out to the driveway and while servicing the vehicle collapsed and apparently died immediately. Mopping the floor was described as one of the more strenuous tasks usually performed by Rogers in connection with his employment.

No autopsy was performed. Dr. Gohlke testified that high blood pressure put a load upon the heart in pumping the blood over the body and exertion of any kind would cause the blood pressure to elevate some. He stated that in cases where he knew a patient had high blood pressure he advised the patient to diminish his activity in order to avoid strain on the heart. Dr. Gohlke further testified that a coronary arrest means the heart suddenly stops beating. On direct examination when asked if in his opinion, based on reasonable medical probability, Rogers' death was due to a coronary arrest, Dr. Gohlke answered, "In my opinion, it could have been a coronary arrest." Later, on cross examination, Dr. Gohlke stated that from what he knew about Rogers he would say that probably the cause of death was related to the cardiovascular system. In response to a hypothetical question, which included a statement that Rogers had been mopping the floor immediately before his death, Dr. Gohlke stated that in his opinion, based upon reasonable medical probability, the exertion overloaded the cardiovascular system and such exertion was the triggering or precipitating cause of Rogers' death.

Dr. Brooks, a pathologist, while discussing the effect of the mopping, stated based upon reasonable medical probability, that "if he exerted himself to this degree, that is reason enough to assume that he did, indeed, succumb to his pathologic processes on the basis of the exertion encountered." He testified that in his opinion Rogers had hypertensive cardiovascular disease. Dr. Brooks stated that "exertion was a part and parcel of his immediate demise."

The record contains some evidence that Rogers suffered a coronary arrest, precipitated by strain or overexertion which was a producing cause of his death. The first point of error is overruled. Baird v. Texas Employers Insurance Association, 495 S.W.2d 207, (Tex.1973); Midwestern Insurance Company v. Wagner, 370 S.W.2d 779 (Tex.Civ.App.—Eastland 1963, writ ref'd n. r. e.); Texas Employers' Insurance Association v. Frazier, 259 S.W.2d 242 (Tex.Civ.App.—Eastland 1953, writ ref'd n. r. e.); Pacific Employers Insurance Company v. Solomon, 488 S.W.2d 189 (Tex.Civ.App.—Texarkana 1972, (writ ref'd n. r. e.); United States Fidelity and Guaranty Company v. Herzik, 359 S.W.2d 914 (Tex.Civ.App.—Houston 1962, no writ hist.); Texas Employers' Insurance Association v. Hatcher, 365 S.W.2d 641 (Tex. Civ.App.—Waco 1963, writ ref'd n. r. e.); Hartford Accident & Indemnity Company v. Gant, 346 S.W.2d 359 (Tex.Civ.App.— Dallas 1961, no writ hist.); Standard Fire Insurance Company v. Sullivan, 448 S.W. 2d 256 (Tex.Civ.App.—Amarillo 1969, writ ref'd n. r. e.).

In its second point of error Liberty Mutual contends the trial court erred . . . "in not inquiring of the jury whether or not the plaintiff had the alleged coronary arrest in the course of his employment . . ." Such issue is usually required, however, we do not think the issue was necessary under the undisputed facts and admissions in evidence. The jury found in answer to special issues that Rogers suffered a coronary arrest which resulted in his death; that the coronary arrest was precipitated by strain or exertion; and, that such strain or exertion was a producing cause of death. In answer to request for admission No. 17, Liberty Mutual admitted that at the time Rogers suffered the attack he was in the course of his employment. The second point is overruled. Midwestern Insurance Company v. Wagner, *supra*.

We have considered all points of error and all are overruled. The judgment of the trial court is affirmed.