The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Jacklyn M. ALLEN et al., Appellees.

No. 1029.

Court of Civil Appeals of Texas, Tyler.

July 21, 1977.

Rehearing Denied Aug. 25, 1977.

Kenzy D. Hallmark, Zeleskey, Cornelius, Rogers, Berry & Hallmark, Lufkin, for appellant.

Rex Houston, Wellborn & Houston, Henderson, for appellees.

MOORE, Justice.

This is a workmen's compensation case. Jacklyn M. Allen, individually and as next friend for her four children (hereafter referred to as plaintiff) brought this suit against Travelers Insurance Company (Travelers) to recover workmen's compensation insurance as a result of the death of her husband, Donald K. Allen. She alleged that her husband died as a result of a heart attack which was precipitated by "overex-

ertion" while he was working in the course and scope of his employment by Simmons Carpet Company, Inc. The defendant, Travelers Insurance Company, was the workmen's compensation insurance carrier for Simmons. The deceased was employed by Simmons to sell and install carpets and linoleum. Trial was before a jury. The findings of the jury which are material to this appeal are as follows: (Special Issue No. 1) the deceased was an employee of Simmons Carpet Company, Inc., on November 8, 1973, the date of his death; (Special Issue No. 2) the deceased "overexerted" himself in the course of his employment on November 8, 1973; (Special Issue No. 3) such "overexertion" was a producing cause of deceased's death.

After having overruled Traveler's motion for judgment non obstante veredicto, the trial court entered judgment for the plaintiff based on the jury's verdict. After its motion for new trial was overruled, Travelers perfected this appeal.

We affirm.

Because of the nature of this case a somewhat extended statement of the facts is necessary. The deceased, Donald K. Allen, had been employed by Simmons Carpet Company for a total of about twenty years. During the ten-year period prior to his death, he had managed a store in Henderson, Texas, for Simmons. As part of his job, he was required to install carpet which was sold through the store. The evidence shows that he had not suffered any serious illness for the last few months prior to his death and had no previous symptoms of heart trouble.

The circumstances surrounding the death of deceased were described by Kenneth Trawick, who was employed as deceased's helper. Trawick testified that on the day of the death of the deceased they were laying carpet on the second floor of a large, two-story house. The particular house had an unusual staircase in that the stairs had ten to twelve inch risers, thus requiring more effort to climb. The staircase was an "L" shaped stairway and therefore it was difficult to carry the large rolls of carpet up to the second floor.

According to Trawick the job of laying carpet was strenuous work requiring the workman to spend 95 percent of his time on his hands and knees working with a device known as a knee kick. The device was used to stretch the carpet and hang it on nails placed on the floor along the edge of the walls of the room. The device was powered by kicking it with the knees. Trawick described the effort necessary to use the device as strenuous. He further stated that to do a large room would require forty or fifty kicks if not more.

In describing the events of the day of deceased's death, Trawick testified that deceased picked him up about 8:00 a. m. and they proceeded to the job site; that upon arriving at the job site they checked the carpet pads which they had installed on the previous day and they proceeded to unload from their truck the six or seven rolls of carpet which were for the downstairs rooms; that each roll was cut to size for a particular area and weighed between 175 and 250 pounds; that each man then unloaded his own tool box which weighed between 75 and 125 pounds and that they unloaded the 150 pound power stretcher box; that they spent all morning working in the downstairs rooms; that they stopped for lunch at about 11:30 a. m. or noon, having finished all but one of the downstairs rooms; that after they had taken their thirty to forty-five minute lunch break they proceeded to lay carpet in the last downstairs room; and that they next commenced unloading the eight or nine rolls of carpet which would be used in the upstairs rooms. He further testified that the carpet for the upstairs areas was a heavy grade carpet and weighed more than that used downstairs; that the smallest roll to be used upstairs weighed around 150 to 175 pounds and some rolls weighed up to almost 300 pounds: that the task of carrying the carpet upstairs was especially difficult because the 90-degree turn which had to be made on the "L" shaped stairway required a considerable amount of pushing and tugging to get the carpet up the stairs;

that the deceased normally was the man in the lead who did most of the pulling; that once all the carpet was upstairs, the men brought their tools upstairs; and that after resting for ten or fifteen minutes they went back to work with the deceased stretching the carpet. Trawick testified that he observed that the deceased was resting again, "sitting on the floor leaning up against the wall smoking a cigarette," and while sitting there the deceased stated: "I bent down just then and like to never caught my breath." They went back to work and at a time when Trawick's back was turned he heard a bump and turned around and saw the deceased fall to the floor, falling on his knee kick device which struck him near his back and shoulders. He further testified that the deceased seemed to be jerking and clinching his teeth, and that after that time he never saw any further bodily movement. Finally, Trawick testified that he accompanied the deceased to the hospital in an ambulance and despite efforts of first aid while enroute to the hospital, deceased never responded.

Dr. Hanson, who had examined the body of the deceased at Memorial Hospital on the day of death, testified that the deceased was dead on arrival. Dr. Hanson testified that upon examination he discovered that "The [deceased] had already expired, there was no pulse, no heartbeat and the pupils were dilated." He testified that in his medical opinion, the cause of death was coronary thrombosis, an acute heart attack. He also added that his diagnosis of acute heart attack was based on his observation of the deceased and the history given him by Trawick. In response to a hypothetical question Dr. Hanson testified that in his opinion the strain on the deceased from the carpet laying precipitated or materially helped to precipitate the heart attack.

Dr. James Mann, testifying in response to hypothetical questions, testified that in the medical profession it was recognized that strain and "overexertion" can precipitate heart attacks. He stated that it was his opinion in all reasonable medical probability that the diagnosis made in the emergency room "is probably the nearest thing to the facts that we have at hand" and that an acute heart attack was the number one choice out of four possibilities that could have happened. He also testified that in reasonable medical probability the acute heart attack was caused by the stress and strain that the deceased underwent a few hours prior to his death. On cross-examination Dr. Mann described the mechanics of several other possible causes of death such as blood clot in the lungs, aneurism or stroke. He testified that the most common type of heart attack is a blockage of the coronary blood vessel that supplies blood to the heart which causes muscle damage to the heart known as ventricular fibrillation. He stated that he based his opinion on two things: (1) that blockage of the coronary blood vessel leading to ventricular fibrillation is the most common type of heart attack; and (2) on the history of the patient which was given to him. Finally, Dr. Mann testified that there is no 100 percent sure way to know what caused the death of an individual unless an autopsy is performed and, therefore, any other diagnosis of the cause of death must be based on the odds and statistics compiled from the records of many thousands and thousands of cases in previous years which have been autopsied. It was still his opinion, however, that the death resulted from a heart attack and that the stress of the work done by the deceased was a precipitating factor.

■ By its first point of error, Travelers contends the court erred in overruling its motion for judgment non obstante veredicto because there is no evidence to support the jury's answers to Special Issue No. 3 finding that "overexertion" was the producing cause of deceased's death. The question presented is whether there was any evidence of probative force to support the jury's answer to Special Issue No. 3. In determining this question, we must view the evidence in support of the jury's findings in its most favorable light considering only the evidence and reasonable inferences to be drawn therefrom which support the findings and rejecting the evidence and inferences contrary to such findings. *Miller*

*v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex. 1974); *Transport Ins. Co. v. Mabra*, 487 S.W.2d 704 (Tex.1972).

Under this point Travelers takes the position that the jury's finding that "overexertion" was a producing cause of death is not supported by any evidence but rather, is based on a presumption upon a presumption. Travelers first says that the jury's finding is based on presumption that the deceased suffered a heart attack. Next, it says that the finding is based on a second presumption that "overexertion" caused the heart attack and on a third presumption that the heart attack was a producing cause of death. This is not the first time such argument has been advanced where an employee died of a heart attack. The contention, however, has been repeatedly rejected by the courts as being unsound. See *Henderson v. Traveler's Ins. Co.*, 544 S.W.2d 649 (Tex.1976); *Texas Employers' Ins. Ass'n v. Talmadge*, 256 S.W.2d 945, 952 (Tex.Civ.App.—Beaumont 1953, writ ref'd n. r. e.); *Southern Underwriters v. Hoopes*, 120 S.W.2d 924, 926 (Tex.Civ. App.—Galveston 1938, writ dism'd).

It is well established that "overexertion" or strain causing a heart attack is an accidental injury to the physical structure of the body within the meaning of the Workmen's Compensation Act. *Henderson v. Travelers Ins. Co., supra; Baird v. Texas Employer's Ins. Ass'n*, 495 S.W.2d 207, 211 (Tex.1973). Proof thereof, occurring in the course of employment, is sufficient to show a causal connection between the injury and the employee's death resulting from such heart attack. *Hartford Accident and Indemn. Co. v. Olson*, 466 S.W.2d 373, 376 (Tex.Civ.App.—El Paso 1971) aff'd 477 S.W.2d 859 (Tex.1972); *Standard Fire Ins. Co. v. Sullivan*, 448 S.W.2d 256, 257 (Tex. Civ.App.—Amarillo 1969, writ ref'd n. r. e.); *Aetna Cas. & Surety Co. v. Calhoun*, 426 S.W.2d 655 (Tex.Civ.App.—Beaumont 1968, writ ref'd n. r. e.); *Midwestern Ins. Co. v. Wagner*, 370 S.W.2d 779, 783 (Tex.Civ.App. —Eastland 1963, writ ref'd n. r. e.). From the very nature of cases of this sort, the evidence is most often largely circumstan-

tial or based on answers by medical witnesses to hypothetical questions. *Baird v. Texas Employers' Ins. Ass'n, supra; Standard Fire Ins. Co. v. Sullivan, supra.* There is ample testimony that the deceased "overexerted" himself shortly before death. There is also ample medical testimony that he had a heart attack and that the heart attack was a producing cause of death. In situations such as this, where the record contains expert or opinion evidence tending to support a finding, it cannot be said that the finding rests upon an inference. *Southern Underwriters v. Hoopes, supra.* While Special Issue No. 3 was not fragmented so as to inquire as to whether the deceased suffered a heart attack and whether the heart attack was a producing cause of death, we think there was ample evidence of probative force to support the jury's finding upon the much broader issue inquiring whether "overexertion" was a producing cause of death. We cannot agree with Travelers' contention that the opinions of the two medical witnesses who testified that the deceased suffered a heart attack were without probative force for lack of factual data on which they were based. Accordingly, travelers' first point is overruled.

Under its seventh point Travelers asserts that the court erred in refusing to disregard Special Issue No. 2 and refusing to enter judgment in its favor for the reason that there was no evidence to support the submission of Special Issue No. 2, inquiring as to whether the deceased "overexerted" himself in the course of his employment. We find no merit in this point.

The witness, Kenneth Trawick, who worked with the deceased on the date of his death, described the work which the deceased was doing at the time of his death. The testimony in this regard has already been delineated and will not be repeated. We are of the opinion that the testimony was sufficient to support the submission of the issue to the jury. Travelers' seventh point is overruled.

By its second, third, ninth and tenth points of error, Travelers contends that the

evidence was factually insufficient to support the jury's answer to Special Issues Nos. 2 and 3. After a review of the entire record and after weighing and balancing all of the evidence, both that in favor of as well as that against the judgment, as we are required to do when determining the question of factual insufficiency, we hold that the jury's findings on Special Issues Nos. 2 and 3 were not based upon factually insufficient evidence and were not against the overwhelming weight and preponderance of the evidence. Accordingly, Travelers' second, third, ninth and tenth points of error are overruled.

■ Under the fifth and eighth points of error Travelers complains that the court erred in refusing to grant its motion for judgment non obstante veredicto on the ground that there are no pleadings to support the submission of Special Issues Nos. 2 and 3. In this connection Travelers contends that the finding that the deceased "overexerted" himself and that such "overexertion" was the producing cause of his death, is not supported by the pleadings because nowhere in the plaintiff's pleadings has it alleged that the deceased "overexerted" himself. We find no merit in these points.

Plaintiff alleged in her pleadings that: "This is a death claim arising out of fatal injuries to Mr. Allen on November 8, 1973, while working for his employer, Simmons Carpet Company, Inc., in the scope and course of his employment. . . . His injury was in the form of an acute and severe strain to his heart and its surrounding muscles, ligaments and vessels, producing an acute myocardial infarction . . ."

The record reveals that Travelers objected to the charge on the ground that there was no pleading to support the submission of an issue inquiring as to whether the deceased "overexerted" himself. However, the objections and exceptions to the court's charge gear no notation showing that they were presented to the trial judge and there is no ruling endorsed thereon as required by Rule 272, Tex.R.Civ.P. Hence,

the purported objection cannot be considered. *Gowan v. Reimers*, 220 S.W.2d 331, 337 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n. r. e.). In any event, travelers does not attempt to demonstrate how the error, if any, could have resulted in any harm to appellant and we fail to see any. Rule 434, Tex.R.Civ.P. Travelers' fifth and eighth points are overruled.

■ By its fourth and sixth points Travelers contends that the court erred in refusing to disregard the jury's findings on Special Issues Nos. 2 and 3 and grant its motion for judgment non obstante veredicto because the finding that deceased "overexerted" himself and the finding that "overexertion" was a producing cause of his death are superfluous and not sufficient to support the judgment. Based on this premise Travelers argues that the court erred in rendering judgment on the remaining findings because there was no jury finding (1) that the deceased suffered a "heart attack"; (2) caused by "overexertion"; and (3) that such was a producing cause of death.

Under the record before us, we do not believe that a failure to obtain such jury findings precluded the rendition of a judgment. The jury found (1) the deceased was an employee; (2) that he "overexerted" himself; (3) that such overexertion was a producing cause of death; (4) the amount of the funeral expenses; (5) that he had worked in the same employment for at least 210 days prior to his death; and (6) the amount of his average daily wage.

While there are no jury findings that the deceased suffered a heart attack or that the heart attack was caused by "overexertion," findings on these issues would constitute only two of the necessary elements required to establish a cause of action under the Workmen's Compensation Act.

Rule 279, Tex.R.Civ.P., provides in substance that where a ground of recovery consists of more than one issue, if one or more of these issues necessary to sustain such ground of recovery are submitted to and answered by the jury and one or more

of such issues are omitted, without objection, and there is evidence to support a finding thereon, such issue or issues shall be deemed as found by the court in such manner as to support the judgment.

Travelers has no point of error complaining of the court's charge on the ground that the court erred in refusing, over its objection, to submit to the jury special issues inquiring as to whether the deceased suffered a heart attack and whether the same was caused by "overexertion." Travelers is therefore deemed to have waived its right to complain of the judgment on the ground that the verdict did not contain findings on all fact issues. Rule 272, supra.

The judgment recites: "Now, upon Motion of the plaintiff for Judgment upon the verdict and upon such other findings as the Court is authorized to make, the Court does render judgment herein." Since there were jury findings on one or more issues necessary to sustain a recovery and there is evidence of probative force to sustain a finding on the omitted issues that the deceased suffered a heart attack caused by "overexertion," and that the heart attack caused his death, the alleged omitted issues must be deemed to have been found by the trial judge in such a manner as to support the judgment. Rule 279, *supra*. Consequently, even if the jury's findings, standing alone, were insufficient to support a judgment, such findings when taken together with the court's implied findings were sufficient to authorize entry of judgment on the verdict. Appellant's points four and six are accordingly overruled.

The judgment of the trial court is affirmed.